BRYAN, Appellant,

v.

LOOKER et al., Appellees.

[Cite as *Bryan v. Looker* (1994), 94 Ohio App.3d 228.]

Court of Appeals of Ohio,
Allen County.

No. 1–93–56.

Decided April 7, 1994.

*Daley, Balyeat, Balyeat & Leahy* and *Clay W. Balyeat*, for appellant.

*James C. King*, for appellee, Terry L. Looker.

*Gregory M. Antalis*, for appellee, The Commercial Bank of Delphos.

---

EVANS, Judge.

This is an appeal by Max R. Bryan from a decision of the Common Pleas Court of Allen County ordering the partition of certain real property located at 8011 Ramsey Road in Monroe Township pursuant to R.C. 5307.01 *et seq.* and determining the percentages of the parties' ownership therein.

Max Bryan ("appellant") began dating Terry Looker ("appellee") in the summer of 1987. In the fall of that year, appellant moved into appellee's apartment. Appellant's job caused him to be on the road as much as eight months a year, generally allowing him only weekend visits with appellee, who did not require him to pay rent, utilities or other expenses. On several occasions appellant gave appellee money before he left on trips. On May 15, 1991, the couple purchased the property that is the subject of this appeal. Appellant paid $50,100 as a down payment and the parties jointly obtained a $40,000 loan from The Commercial Bank of Delphos to finance their purchase. The note was executed by the parties as being "unmarried and of legal age." The deed named both appellant and appellee as the grantees without any reference to proportional ownership. After the purchase of the home, appellee made the mortgage payments while appellant paid taxes, insurance and miscellaneous maintenance expenses.

The relationship between the parties deteriorated and in January 1993, appellant filed an action in the common pleas court requesting partition of the property. The court conducted a hearing on the matter on July 1, 1993, found the parties to be equal co-tenants and, therefore, ordered the proceeds from the sale of the property to be divided equally.[1]

From this judgment appellant appeals. In his first assignment of error, appellant challenges the trial court's allocation of ownership of the property, stating:

"The court erred in ordering an equal division of real estate pursuant to partition, without considering each party's contribution to the purchase of said property."

---

1. The parties stipulated at trial that the real estate could not be partitioned and that The Commercial Bank of Delphos had the first and best lien on the property, save and except taxes.

■ Under Ohio law, an owner in fee simple has the right, pursuant to R.C. 5307.01 through R.C. 5307.25, to seek partition of land in which he has an interest. Although the right to partition is controlled by statute, it has long been held to be essentially equitable in nature. *Russell v. Russell* (1940), 137 Ohio St. 153, 157, 17 O.O. 506, 508, 28 N.E.2d 551, 553; *Kukla v. Gonski* (1931), 40 Ohio App. 575, 179 N.E. 206; *Shively v. Shively* (1950), 88 Ohio App. 7, 16, 43 O.O. 385, 390, 95 N.E.2d 276, 282; see, generally, 19 Ohio Jurisprudence 3d (1980) 281, Cotenancy and Partition, Section 39.

R.C. 5307.01 provides:

"Tenants in common, survivorship tenants, and coparceners, of any estate in lands, tenements, or hereditaments within the state, may be compelled to make or suffer partition thereof as provided in sections 5307.01 to 5307.25 of the Revised Code."

R.C. 5307.04 provides:

"If the court of common pleas finds that the plaintiff in an action for partition has a legal right to any part of the estate, it shall order partition thereof in favor of the plaintiff or all parties in interest, appoint three disinterested and judicious freeholders of the vicinity to be commissioners to make the partition, and order a writ of partition to issue."

■ In order to obtain partition the plaintiff must have title to some part of the real estate and be in possession of the property or have an immediate right to possession. *Lauer v. Green* (1918), 99 Ohio St. 20, 121 N.E. 821. In the instant case the parties were admittedly tenants in common in possession of the property. The issue presented for the trial court's determination was the percentage of each party's ownership interest in the property.

■ The deed granting the property to appellant and appellee named them as grantees, but was silent as to their respective ownership interests. Therefore, a rebuttable presumption exists that the grantees took equal interests in the property. *Spector v. Giunta* (1978), 62 Ohio App.2d 137, 16 O.O.3d 299, 405 N.E.2d 327, citing *Huls v. Huls* (1954), 98 Ohio App. 509, 58 O.O. 46, 130 N.E.2d 412.

■ In *Spector*, the court noted that the presumption of equality can be rebutted by evidence demonstrating unequal contributions toward the purchase price of the property and on that showing a presumption arises that the parties intended to share the property in proportion to the amounts they contributed. *Id.,* 62 Ohio App.2d at 141, 16 O.O.3d at 301–302, 405 N.E.2d at 330. Thus, in order for appellant to share in the proceeds of the partition action in the same proportion as his contribution to the purchase price, he had to overcome the

presumption of equal ownership. This he did by presenting evidence that he wrote a personal check for the full amount of the down payment of $50,100. It was then incumbent on appellee to establish the amount of her contribution toward the purchase price of the property.

Appellee attempted to establish her contribution to the down payment by contending that she and appellant made an agreement in 1988 whereby appellant would live rent free with her in order to save the money necessary for a down payment on a home. Appellant claimed no such contract existed. Rather, he claimed he only permitted appellee's name to be placed on the deed after she agreed to make the mortgage payments.

The difficulty for this court in determining this appeal lies in the fact that the trial court did not expressly find the existence of either contract. The court only stated both agreements were "plausible." The outcome of this case rests in the trial court's making the factual determination as to the existence of the contract which appellee claims the parties entered into in 1988. In addition, the trial court must determine the value of appellee's contribution to the down payment under that contract.

If, in fact, this contract does exist, then appellee has established a contribution. If, however, this contract does not exist, appellee can demonstrate no contribution and appellant would be entitled to a proportionately larger amount of the proceeds from the sale of the property.

The state of the case then is that appellant has overcome the presumption of equal ownership so that the proceeds of the partition must be divided on the basis of each owner's contribution to the purchase price. However, from the record it is not possible to know how much weight and credibility the trier of fact assigned to appellee's testimony concerning the 1988 contract. Therefore, there is no basis upon which to divide the proceeds of the partition.

It appears that the trial court rested the decision to equally divide the proceeds on the finding that there was no evidence appellant ever treated appellee as anything other than an equal owner. We disagree with this conclusion because there is evidence in the record that appellant did consider appellee as something other than an equal owner. For example, appellant contended that he refused to add appellee's name to the deed unless she agreed to make *all* the mortgage payments. If he considered her to be an equal owner at the time the down payment was made, then she, as an equal owner, should only have been required to make half the mortgage payments. Also, if appellant in fact considered appellee as an equal owner there should have been no dispute about her name appearing on the deed in the first place.

This cause must be remanded for the trial court to make the factual determination as to the existence of the 1988 contract and the value of appellee's performance under that contract.

Appellant's first assignment of error is sustained.

Because of their similarities, we consider appellant's second and fourth assignments of error collectively:

"The trial court erred in sustaining the existence of an oral agreement which lacked sufficient consideration and a meeting of the minds."

"The trial court erred when it ruled that an oral agreement existed between the parties. The 'Agreement' must be precluded by the statute of frauds as the agreement is not capable of performance within one year."

In both of these assignments of error appellant claims the court had to find the existence of the oral contract which appellee claimed the parties entered into in 1988 in order to find the parties to be equal owners. However, in our review of the trial court's journal entry we do not find that the court conclusively found any contract to exist. Nevertheless, in the interests of justice and considering that the cause must be remanded for further proceedings, we address the arguments appellant presents in these assignments of error.

■ First, appellant contends there was no consideration for the alleged agreement whereby he would live with appellee rent free in order to save money for a down payment. While we specifically do not make a determination as to the existence of this contract, we find appellee's allowing appellant to move into her home was sufficient consideration to support such a contract. Appellee was under no duty to provide free housing for appellant, but agreed to do so anyway. Appellee provided an obvious benefit to appellant by maintaining an apartment for him to utilize. Appellant's claim that appellee provided no consideration because she was already paying rent, utilities and expenses associated with her apartment is not well founded. It was not necessary that appellee incur additional expenses as consideration. Her agreement to do something which she had no previous obligation to do was sufficient.

■ Next, appellant's contention that this contract violated the Statute of Frauds is erroneous. The Statute of Frauds, as it relates to appellant's assignment of error, requires contracts not to be completed within one year to be in writing.[2] Appellant contends the contract, which appellee claims was entered

---

2. R.C. 1335.05 provides:

"No action shall be brought * * * upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or

into in 1988, violates the Statute of Frauds because it was not completed until three years after its making. We disagree.

■ A contract which is not likely to be fully completed within a year, and which in fact is not completed within a year, does not automatically violate the Statute of Frauds if, at the time the contract is made, there is a possibility in law and in fact that full performance such as the parties intended may be completed before the expiration of a year. 3 Jaeger, Williston on Contracts (3 Ed.1960) 576–578, Section 495; see, generally, 51 Ohio Jurisprudence 3d (1984) 230–231, Statute of Frauds, Section 76. Simply stated, if an agreement may be completed within a year, the contract does not violate the Statute of Frauds. See *Ford v. Tandy Transp., Inc.* (1993), 86 Ohio App.3d 364, 382, 620 N.E.2d 996, 1007–1008.

In the instant case it was possible for the 1988 contract to be completed within one year of its conception. Because the parties never established a specific amount of money which appellant had to save for a down payment, it was possible that the parties could have purchased a home within one year using whatever amount of money appellant had saved up to that time for the down payment.

Appellant's second and fourth assignments of error are overruled.

Appellant's third assignment of error claims:

"The court failed to offset improvements made to the real property by the plaintiff-appellant, as prescribed by the law as relates to partition."

■ Appellant contends he is entitled to credit in the amount of $4,600 for improvements he made to the property.

This court has previously noted: "The general rule is that 'a tenant in common is not entitled to compensation for services rendered in the care and management of the common property, in the absence of an agreement for compensation.' " See *Whirrett v. Mott* (1991), 77 Ohio App.3d 177, 179, 601 N.E.2d 525, 527, and authorities cited therein.

In the instant case the trial court made no finding of an agreement regarding maintenance expenses. Therefore, appellant was not entitled to credit for his expenditures in maintaining the property. While there was evidence at trial that appellant purchased gravel for the driveway and paid for maintenance on the well pump and water softener, because the only improvement found by the trial court was $1,500 worth of landscaping, the trial court apparently found these other items to be routine maintenance expenses for which appellant should not receive credit.

---

some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized."

Appellant's third assignment of error is overruled.

In his final assignment of error appellant contends:

"The court erred when it awarded the appellee damages based upon cohabital [*sic*] relationship."

 Appellant claims the trial court "disguised its decision as an award to the Appellee for palimony." We disagree. The trial court specifically stated this case was not a palimony action. Moreover, the court did not make an award to appellee, but simply found that appellant failed to meet his burden of rebutting the presumption of equal ownership in the property. Accordingly, the court ordered the proceeds from the sale of the property to be shared equally.

Appellant's fifth assignment of error is overruled.

Having found error prejudicial to the appellant herein, the judgment of the trial court finding equal ownership of the property is vacated. The judgment is affirmed in all other respects. The cause is remanded to the trial court for a determination of the existence of the 1988 contract and for the court to then enter the appropriate judgment consistent with this opinion.

*Judgment vacated in part and cause remanded.*

HADLEY, J., concurs.

SHAW, P.J., dissents.

SHAW, Presiding Judge, dissenting.

In my view, we have improperly substituted our judgment for that of the trial court and unnecessarily remanded this case to that court merely to restate a sound decision. Accordingly, I respectfully dissent.

The conclusion reached by the majority of this court that the plaintiff-appellant has overcome the presumption of equal ownership simply by furnishing the $50,100 downpayment or by requiring the defendant-appellee to pay all of the mortgage payments instead of just half can be reached only by weighing the evidence in favor of the appellant's version of the circumstances surrounding those events. However, it is readily apparent from the record that the deposit and mortgage arrangements could be consistent with either an equal or an unequal ownership intention as between the parties. Moreover, as the trier of fact, the trial court specifically found that the evidence introduced to rebut the presumption of equal ownership was equally plausible or credible in support of the presumption. In this situation, it would be entirely correct to conclude, as the trial court expressly did, that such evidence is not sufficient to overcome the presumption of equal ownership.

Accordingly, I believe the trial court's decision falls squarely within the parameters of that court's prerogative to weigh the evidence before it and should not be disturbed by this court. I would overrule the first assignment of error and affirm the judgment of the trial court.