JOURNAL ENTRY and OPINION.
{¶ 1} Defendant-appellant Mamdouh Nukta appeals from the trial court judgment in favor of plaintiff-appellee Mohammad Ali Samman in this action for breach of contract.
 {¶ 2} Appellant challenges the judgment on three grounds: he asserts the trial court improperly denied his motion for a continuance, improperly concluded an oral partnership existed between the parties when an essential contractual term had not been defined, and improperly rejected his defense based upon the Statute of Frauds.
 {¶ 3} Following a review of the record, this court cannot agree with any of appellant's assertions. The trial court's judgment, therefore, is affirmed.
 {¶ 4} The record reflects appellee was born in Syria and worked for appellant briefly before attending college in the United States. Appellee obtained degrees in electrical engineering and engineering. In 1987, after receiving a letter from appellant, appellee met with him in Dayton, Ohio over a proposal to form a business venture together.
 {¶ 5} Appellant stated they spoke about "being partner[s]" in a new company which was "to sell spare parts, pipes, valves" and other similar items to customers in the country of Syria. The business, later called The European-American Trading Company ("EATCO"), was to sell its products through appellant's two other multi-national businesses, viz., his business based in Syria, EMECO, and his business based in Germany, HBM. In turn, appellant indicated EMECO would purchase its United States products exclusively from EATCO.
 {¶ 6} In consummating the arrangement, appellant, who previously had been convicted in Syria of bribery, agreed to provide the capital necessary to form the company; appellee promised to provide the expertise necessary to run it. A significant amount of capital was required; therefore, they agreed "that the ownership of the company [was] to be divided 80/20, 80 to [appellant], 20 to [appellee]." Profits were to be divided on the same basis as ownership. Any expenses incurred on behalf of appellant's other businesses and his family members were to be paid from appellant's share. Appellee, who had no other source of income, was to receive a yearly salary and loans; they were to be treated as a "draw" on his share. They decided to establish the business in the Cleveland area because it had a large number of manufacturers for the items EATCO was to provide to Syrian customers.
 {¶ 7} Appellee began working in 1988. He "solicited offers from manufacturers," then "submit[ted] them through [EMECO]." When the Syrian customer agreed to purchase the items offered, the customer would contact EMECO to confirm the order and open a letter of credit at a bank; subsequently, EATCO would ship the product in exchange for the transfer of the money. Appellee generally was EATCO's only employee, although appellant permitted the company to hire a part-time secretary, and, in addition, beginning in 1995 required his adult son Maher to perform all of the accounting duties for EATCO.
 {¶ 8} Over the years, appellee eventually became disenchanted with the arrangement with appellant for several reasons. Appellee became exasperated with appellant's parsimony. Appellee's attempts, moreover, to review with appellant the business' receipts and to discuss the partnership split of monies consistently were put off. In 1992, appellant's son Maher caused appellee some embarrassment when he discovered Maher used the company's offices for sexual trysts. Appellee also discovered appellant's EMECO business partner was the Syrian official implicated in appellant's bribery conviction.
 {¶ 9} In May, 2000 appellee decided to end his relationship with appellant. He made this decision after he inadvertently discovered some evidence that proved appellant had used EATCO to provide counterfeit materials to Syrian customers. Since appellee realized he could be indicted for engaging in international fraud, he notified appellant he was ending their partnership. He also demanded an accounting, but appellant ignored the demand.
 {¶ 10} Appellee therefore determined to do his own accounting; he obtained the business' banking records. After comparing them with the company invoices, billing statements and copies of company checks, appellee found appellant had overbilled EATCO in presenting expenses due his other companies. Additionally, appellant had used EATCO funds to pay his American debts and salaries for his family members. Appellee also found evidence appellant was using EATCO for "money-laundering."
 {¶ 11} Eventually, appellee used the foregoing records to make a final compilation for EATCO. He determined that after twelve years in business, EATCO had a gross income of $36,144,475.75. After gross expenses in the amount of $29,093,853.21, which included the inflated sums paid to appellant's Syrian and German companies, EATCO made a gross profit of $7,050,622.54. Appellee divided that figure into 80% and 20% shares, then subtracted $507,938.00, which represented the salary and loans he had taken from EATCO. He presented a demand to appellant for the final figure, viz., $902,185.00.
 {¶ 12} Appellant became enraged when confronted with appellee's documents. After he struck appellee, appellee left EATCO's building and never returned. Upon further review of the documentary evidence, appellee readjusted the figures for legitimate expenses. He eventually came to a total he asserted reflected the parties' original agreement, viz., $981,517.22.
 {¶ 13} In January 2001, appellee filed the instant action alleging he and appellant had entered into an oral partnership agreement "for an indefinite term." He alleged the agreement provided he would be paid an annual salary in addition to his share of 20% of the profits, but that in September 2000 appellant had assumed control of the partnership assets and had refused to pay appellee his share. Appellee demanded an accounting and judgment in an amount "in excess of $900,000.00."
 {¶ 14} After appellant had filed his answer, discovery proceeded in the action. In early May, 2001, the trial court held a case management conference. It then issued a journal entry setting dates for the filing of expert reports and dispositive motions, set a final pretrial hearing for February 20, 2002, and set a trial date of March 4, 2002.
 {¶ 15} Eventually, due to appellee's encountering of delays in obtaining pertinent materials for his expert's report, the trial court granted appellee an extension of time. The dates for the final pretrial and trial, however, remained "as set."
 {¶ 16} In December, 2001 appellant filed a motion for leave to file counterclaims against appellee. A month later, appellant filed a motion requesting permission to attend the final pretrial "by telephone." Appellant explained that two separate trips to the United States from his residence in Syria would cause his "business" to suffer and cause him to incur "additional travel costs."
 {¶ 17} That same day, appellant filed a motion for a protective order. He asserted appellee had scheduled his deposition for January 30, 2002 "without consulting opposing counsel." He further indicated he was "out of the country" but could have accommodated appellee "while [he] was in the United States" if appellee had made "an effort" to contact his attorney.
 {¶ 18} For his part, appellee filed a motion to compel appellant to attend a deposition. After the trial court reviewed the parties' memoranda of law, it granted appellee's motion and denied each of appellant's three motions.
 {¶ 19} Appellant, however, thwarted appellee's efforts to obtain his deposition. The record reflects that rather than appear personally for a deposition, appellant suggested appellee obtain it by telephone due to appellant's "medical condition." Appellee was informed appellant had returned to his house in Germany to recuperate from a surgical cardiac procedure performed in the United States in mid-January and would not be returning to this country prior to trial. Appellee responded by filing a motion for a default judgment.
 {¶ 20} The parties each filed briefs with respect to the foregoing matters; on February 19, 2002, a new attorney filed an entry of appearance on appellant's behalf. New counsel contemporaneously requested a continuance of both the final pretrial set for the following day and of the trial itself; counsel based it upon his client's ill-health and his own inability adequately to prepare a defense on such short notice. The trial court eventually issued an order denying appellant's motion.
 {¶ 21} Three days before the scheduled trial date, appellant reviewed his motion for a continuance. When trial commenced, appellant was not in attendance. The trial court considered counsel's arguments; however, once assured counsel had been aware of the relevant dates prior to accepting appellant's defense, and that appellant felt fit enough to travel to Germany within a week of his surgery, the trial court denied the renewed motion for a continuance of trial.
 {¶ 22} Trial thereupon was held to the bench. Appellee presented his own testimony and the testimony of a German manufacturer's attorney regarding the counterfeit materials appellee had found at EATCO. Appellee also introduced into evidence the numerous records he had reviewed and assembled that supported his damages calculations.
 {¶ 23} Appellant presented the testimony of EATCO's accountant, who had done the company's financial statements and tax returns for the years 1995 through 2000. This witness admitted all the figures had been provided to him by appellant's son Maher. The witness further admitted his reports did not comply with generally accepted accounting practices, he was not a certified public accountant, and his compilations contained several anomalies he failed to question.
 {¶ 24} Appellant's son Maher also testified on behalf of the defense. Although Maher challenged appellee's calculations, he acknowledged he had received neither financial nor accounting training in his life. Maher further acknowledged that even though he held no such authority his signature on a document had been notarized as that of a representative of the Lakewood Chamber of Commerce.
 {¶ 25} Ultimately, the trial court issued a judgment entry finding in appellee's favor on his complaint for money damages. The trial court set forth in detail in the entry the basis for its decision appellee was "entitled to $981,517.22 as his share of the partnership profits for the period in question."
 {¶ 26} Appellant's appeal of the foregoing decision essentially presents three issues for this court's consideration. They follow in logical order.
 {¶ 27} Appellant's second assignment of error states:
 {¶ 28} "The trial court erred when it refused to grant a continuance of the trial due to Nukta's ill-health and the advice of his physician."
 {¶ 29} Appellant argues the trial court acted improperly in denying his motions for a continuance of trial despite its awareness of appellant's medical condition. Appellant's argument is unpersuasive.
 {¶ 30} A motion for continuance is left to the trial court's sound discretion; therefore, the decision will not be disturbed upon review unless the trial court clearly abused its discretion. State v. Unger
(1981), 67 Ohio St.2d 65, 67. Finding an abuse of discretion in a case necessarily depends upon the case's circumstances. Id.
 {¶ 31} The trial court in this case made its decision under the following circumstances: 1) after a year of discovery, and armed with a motion to compel, appellee still had been unable to obtain appellant's deposition even one month prior to the scheduled trial date; 2) appellant had sought to absent himself from the final pretrial only for "business" reasons; 3) two weeks prior to the scheduled trial date, appellant obtained a new defense attorney; 4) appellant presented no statements from his Cleveland-based surgeon regarding the condition of his health; 5) appellant felt well enough to travel to Germany within one week of his surgery, which took place at least a month-and-a-half prior to trial; and 6) appellant could give no guarantee he would be present at trial on any specific date in the future.
 {¶ 32} The foregoing facts reasonably permitted the trial court to make four conclusions: 1) the length of the delay was indefinite; 2) appellee already had been inconvenienced; 3) the requested delay was contrived; and, 4) appellant had contributed to the situation he asserted gave rise to his request.
 {¶ 33} Based upon the circumstances, therefore, the trial court did not abuse its discretion in denying appellant's motions for a continuance. Hartt v. Munobe 67 Ohio St.3d 3, 9, 1993-Ohio-177; NiamInvestigations, Inc. v. Gilbert (1989), 64 Ohio App.3d 125; Smith v.30850 Lorain Road, Inc. (June 23, 1994), Cuyahoga App. No. 65360. Appellant's second assignment of error is overruled.
 {¶ 34} Appellant's first and third assignments of error state:
 {¶ 35} "I. The trial court erred when it ruled that a partnership existed.
 {¶ 36} III. The trial court erred when it found that an agreement between the parties as proposed by Samman existed because the evidence demonstrated there was no meeting of the minds."
 {¶ 37} Appellant alternatively argues either the parties had only an employment rather than a partnership agreement or the parties had no agreement at all because they had failed to consider "the method by which the profit split was to be calculated." On these grounds, appellant contends a directed verdict in his favor was appropriate. This court disagrees.
 {¶ 38} Civ.R. 50 is applicable only in jury cases, not in cases tried to the bench. Jackson v. Gossard (1989), 48 Ohio App.3d 309,311-312. Rather, a motion requesting the involuntary dismissal of a plaintiff's action comes instead within the scope of Civ.R 41(B)(2). Id. In a case tried to the bench, when the defendant challenges the plaintiff's case at the close of his evidence the trial court, as the trier-of-fact, may weigh the evidence. Levine v. Beckman (1988),48 Ohio App.3d 24, 27; see, also In re Estate of Fugate (1993),86 Ohio App.3d 293, 297. Thus, this court must afford the trial court's decision some deference.
 {¶ 39} The trial court in this case had powerful evidence in the form of appellee's testimony that he and appellant had formed a plan to co-own a company. By its terms, appellee contributed his expertise and hard work, and appellant contributed his capital and entrepreneurial experience. The trial court was not free simply to ignore this evidence, especially when the trial court specifically found appellee's testimony to be credible. Smith v. 30850 Lorain Road, Inc., supra.
 {¶ 40} Furthermore, appellee's testimony and documentary evidence supported his assertion the partners had agreed to split the company's profits. The method by which they arrived at this split was not an essential term without which the contract could not exist, since the definition of the term "profit" may be found in any dictionary. As appellee calculated, profits essentially are the result of gross income minus gross expenses.
 {¶ 41} Consequently, the trial court properly denied appellant's request for a judgment in his favor on appellee's complaint.
 {¶ 42} Appellant's first and third assignment of error, accordingly, are overruled.
 {¶ 43} Appellant's fourth assignment of error states:
 {¶ 44} "IV. The trial court erred when it implicitly ruled that Samman's attempt to enforce the agreement was not barred by the Statute of Frauds."
 {¶ 45} Appellant argues the evidence clearly established his affirmative defense based upon R.C. 1335.05, Ohio's Statute of Frauds. He contends that since appellee indicated the partnership had no definite duration, he was to receive a "draw" upon his portion of the profits only annually, and he further produced evidence to show EATCO had been in business for at least twelve years, the fact that appellee produced no agreement in writing was fatal to his action. Upon a review of the record, however, appellant's argument lacks merit.
 {¶ 46} This court considered a case with similar facts in Cloudv. Baldwin (Feb. 13, 1997), Cuyahoga App. No. 70795. In addressing the same argument raised by appellant herein, this court explained that an agreement falls outside the Statute of Frauds if the evidence demonstrates either that the parties' agreement "could have been performed in less than a year," or that the plaintiff had fully performed his obligations under the agreement. Both applied in this case.
 {¶ 47} Certainly, if appellant's business venture with appellee proved to be unprofitable, it could have been dissolved at any time. Byranv. Looker (1994), 94 Ohio App.3d 228 at 234.
 {¶ 48} Moreover, in view of appellee's intensive labor for a period of twelve years in reliance upon a promise of 20% of EATCO's profits, it would be impossible to return the parties to their original status. Cloud v. Baldwin, supra.
 {¶ 49} Under these circumstances, appellant's invocation of R.C.1335.05 could not succeed. Therefore, his fourth assignment of error also is overruled.
 {¶ 50} The trial court's judgment is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, J. and DIANE KARPINSKI, J. CONCUR.