[Cite as *Fontanarosa v. Connors*, 2021-Ohio-2346.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

MARK FONTANAROSA,

Plaintiff-Appellant/Cross-Appellee,

v.

KELLY CONNORS,

Defendant-Appellee/Cross-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No.  20 MA 0031 & 20 MA 0038**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 18 CV 45

**BEFORE:**
Gene Donofrio, Carol Ann Robb, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed

---

*Atty. Greg Rossi, and Atty. James Melfi,* Rossi & Rossi Co., 26 Market Street, Suite 802, Youngstown, Ohio 44501, for Plaintiff-Appellant  and

*Atty. Martin White*, Martin F. White Co., LPA, 156 Park Avenue, N.E., Warren, Ohio 44482, for Defendant-Appellee.

Dated:
June 29, 2021

**Donofrio, J.**

{¶1}     Plaintiff-appellant/cross-appellee, Mark Fontanarosa, appeals from a Mahoning County Common Pleas Court judgment finding that he was not entitled to the return of an engagement ring and wedding band that he had purchased for defendant-appellee/cross-appellant, Kelly Connors, following a bench trial.  Connors cross-appeals from a Mahoning County Common Pleas Court judgment awarding summary judgment in favor of Fontanarosa on his claim for a partition of a residence deeded in both parties' names.

{¶2}     Fontanarosa married his wife Sue Ellen in 1983.  Fontanarosa and his wife separated in 2012.  Shortly thereafter he began a relationship with Connors.

{¶3}     The parties moved in together sometime in late 2012.

{¶4}     In November 2012, Fontanarosa purchased a diamond engagement ring and wedding band for $36,295.  In March 2013, Fontanarosa gave Connors the engagement ring, which she accepted along with Fontanarosa's marriage proposal.

{¶5}     During the parties' relationship, in October 2015, Fontanarosa purchased a home on Leffingwell Road in Canfield (the home) for the price of $395,000.  Fontanarosa provided all of the funds for the purchase and he was the only person listed on the settlement statement and on the property insurance.  At closing, Fontanarosa indicated to the title agent that if something were to happen to him, he wanted the home to go to Connors.  The warranty deed for the home, filed October 16, 2015, transferred the home to Fontanarosa and Connors for their joint lives, remainder to the survivor of them.

{¶6}     During most of the parties' relationship, Fontanarosa was still legally married to Sue Ellen.  Fontanarosa's marriage was not legally dissolved until October 5, 2017.

{¶7}     The parties' relationship eventually deteriorated and Connors obtained a civil protection order against Fontanarosa in December 2017.

**{¶8}** Fontanarosa filed a complaint and an amended complaint in January 2018, against Connors seeking an order of partition that would award him 100 percent of the value of the home, asserting a claim for conversion of various items of personal property, and asserting a claim for replevin for the diamond engagement ring and wedding band. Connors filed an answer and counterclaim seeking an order of partition dividing the home's value equally between her and Fontanarosa and seeking a judgment that all personal property in her possession, including the rings, was gifted to her by Fontanarosa.

**{¶9}** Fontanarosa next filed a motion for partial summary judgment on the partition claim. He argued that he provided all of the funds for the purchase of the home, totaling $395,000. He further argued that when asked how he would like to take title, he told the title agent that if something happened to him he wanted the home to go to Connors.

**{¶10}** Connors filed a trial brief, which the trial court treated as a motion in opposition to Fontanarosa's motion for partial summary judgment and a motion for summary judgment.

**{¶11}** During the pendency of the matter, the parties sold the home and the proceeds were held in an escrow account awaiting judgment of the trial court.

**{¶12}** On February 7, 2019, the trial court granted Fontanarosa's motion for partial summary judgment and awarded him 100 percent of the proceeds of the home. In so ruling, the court found that Fontanarosa paid the entire purchase price while Connors paid nothing. It also noted that Fontanarosa paid exclusively for costly repairs and improvements to the home. As to Connors' motion for summary judgment regarding the engagement and wedding rings, the trial court found that there were genuine issues of material fact that precluded summary judgment. Therefore, it overruled Connors' motion.

**{¶13}** The trial court set the remaining claims for a bench trial. Prior to trial, the parties resolved Fontanarosa's claim for the return of certain items of personal property. Thus, the matter proceeded to a bench trial before a magistrate on the sole remaining claim regarding the rings.

**{¶14}** At trial, the magistrate heard testimony from both parties. The magistrate found that Fontanarosa had "unclean hands" and, therefore, could not recover the rings on a theory of unjust enrichment. The magistrate pointed out that Fontanarosa proposed

marriage to Connors and gave her an engagement ring while he was still married to another woman.  He found this conduct to be reprehensible and violating the bonds of marriage.  The magistrate found that Connors also had "unclean hands" because she accepted a marriage proposal from a man she knew to be married.  Because both parties came to the court with unclean hands, the magistrate determined that the court, in equity, would leave the parties as they were.  Therefore, the magistrate rendered judgment in favor of Connors.

{¶15}  Fontanarosa filed objections to the magistrate's decision. He argued that the magistrate erred as a matter of law in concluding that the giving an engagement ring to Connors while he was still legally married, but separated from his wife, constituted unclean hands prohibiting equitable relief.

{¶16}  The trial court overruled Fontanarosa's objections.  It found no error of law with the magistrate's decision.  Therefore, the court entered judgment in favor of Connors regarding the rings.

{¶17}  Fontanarosa filed a timely notice of appeal on March 3, 2020, from the trial court's judgment regarding the rings.  Connors filed a timely notice of appeal on March 17, 2020, from the trial's court award of partial summary judgment regarding the house.  This court consolidated the two appeals.

{¶18}  Fontanarosa now raises two assignments of error.  His first assignment of error states:

> THE TRIAL COURT ERRED AS A MATTER OF LAW IN CONCLUDING THAT PLAINTIFF/APPELLANT HAD UNCLEAN HANDS PRECLUDING EQUITABLE RELIEF.

{¶19}  Fontanarosa argues that the trial court erred in applying the doctrine of unclean hands in denying him equitable relief.  He argues the rings were clearly given in contemplation of marriage.  And although he was still married at the time he gave the engagement ring to Connors, Fontanarosa argues Connors was equally culpable in any reprehensible conduct as she knew he was married when she began her relationship with him and moved in with him and they shopped for the rings together.  He asserts Connors should not be rewarded for accepting a proposal from a married man.

Case No. 20 MA 0031 & 0038

**{¶20}** Many Ohio appellate courts have held that a gift made in contemplation of marriage, typically an engagement ring, may be recovered by the donor if marriage does not ensue, regardless of which party is at fault regarding the termination of the engagement. *Pine v. Price*, 7th Dist. Columbiana No. 01-CO-46, 2002-Ohio-5223, ¶ 14, citing *Patterson v. Blanton*, 109 Ohio App.3d 349, 352, 672 N.E.2d 208 (10th Dist.1996), *McIntire v. Raukhorst*, 65 Ohio App.3d 728, 585 N.E.2d 456 (9th Dist.1989), *Lyle v. Durham*, 16 Ohio App.3d 1, 473 N.E.2d 1216 (1st Dist.1984).

**{¶21}** Because Fontanarosa was legally married to someone else when he proposed marriage to Connors and gave her the engagement ring, the trial court found that he had "unclean hands" and could not recover the rings on a theory of unjust enrichment.

**{¶22}** The defense of unclean hands requires a showing that the party seeking relief engaged in reprehensible conduct with respect to the subject matter of the action. *Downie-Gombach v. Laurie*, 8th Dist. Cuyahoga No. 102167, 2015-Ohio-3584, ¶ 46, citing *State ex rel. Coughlin v. Summit Cty. Bd. of Elections*, 136 Ohio St.3d 371, 2013-Ohio-3867, 995 N.E.2d 1194, ¶ 16. In this case, there is no dispute that Fontanarosa was married to Sue Ellen when he proposed marriage to Connors and gifted her the engagement ring. But there is also no dispute that Connors knew that Fontanarosa was still married when she began her relationship with him, when she moved in with him, and when she accepted his proposal. Both parties here were fully apprised of their situation. Thus, on the facts of this case, we find the doctrine of unclean hands does not apply.

**{¶23}** Therefore, we are back to the general presumption that a gift made in contemplation of marriage may be recovered by the donor if the marriage does not occur. But we must consider another set of facts unique to this case.

**{¶24}** Connors testified there was an incident in 2015 of domestic violence. (Tr. 107). Connors told her counselor about the incident and her counselor reported it to the police. (Tr. 108). Connors moved out of Fontanarosa's house for a short time after that. (Tr. 108). Connors stated that Fontanarosa urged her then to sell the engagement ring and to use the money for her living expenses. (Tr. 113). At that time, the two drafted a document stating that Fontanarosa purchased the ring for $36,295 and that he "relinquish[ed] all rights to the property of this ring regardless of the future of marriage or

a relationship" and that he did this "based on hardships that have occurred in the relationship." (Tr. 114-116; Plaintiff's Ex. 3). It went on to state that Connors could use the money "to reestablish herself financially under the circumstances that a fallout of the relationship should occur." (Plaintiff's Ex. 3). The two went together to a notary where Fontanarosa signed the document. (Tr. 117; Plaintiff's Ex. 3). Connors never sold the ring, however, and the two reconciled. (Tr. 118).

**{¶25}** Based on this document, signed by Fontanarosa and notarized, Fontanarosa relinquished any rights he had to the engagement ring. He specifically stated that even if the marriage did not occur, he relinquished all rights to the ring. He further stated that Connors could use the money from the ring to reestablish her finances if the parties were to break up.

**{¶26}** "An appellate court may affirm based on different reasoning than found by a trial court, but an appellate court cannot disturb a judgment or order that is legally correct based on different reasoning." *John A. Becker Co. v. Jedson Eng., Inc.*, 2d Dist. Montgomery No. 27891, 2018-Ohio-3924, ¶ 19. While we do not agree with the trial court's reasons for awarding Connors the ring, we do agree that the trial court reached the legally correct outcome in this case.

**{¶27}** Accordingly, Fontanarosa's first assignment of error is without merit and is overruled.

**{¶28}** Fontanarosa's second assignment of error states:

> THE TRIAL COURT'S DECISION THAT MR. FONTANAROSA HAD UNCLEAN HANDS WHICH PRECLUDED HIM FROM EQUITABLE RELIEF WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶29}** Given our resolution of Fontanarosa's first assignment of error, his second assignment of error is now moot.

**{¶30}** Connors raises a single assignment of error. It states:

> THE TRIAL COURT ERRED WHEN IT GRANTED PARTIAL SUMMARY JUDGMENT IN FAVOR OF APPELLEE/CROSS-APPELLANT, AWARDING HIM A ONE HUNDRED PERCENT INTEREST IN THE LEFFINGWELL PROPERTY.

Case No. 20 MA 0031 & 0038

**{¶31}** Connors argues that because the deed to the home was titled in both of their names, a rebuttable presumption arose that they owned the home equally. She asserts that placing the name on a deed of one who has not made a financial contribution can result in an irrevocable gift. She contends that if there was any question of fact as to whether Fontanarosa intended to gift her with an interest in the home, then summary judgment was not appropriate.

**{¶32}** Connors points out that in the purchase agreement for the home, Fontanarosa specifically requested that Connors' name be put on the deed. She further points out that in his affidavit, Fontanarosa stated that he told the title company that if anything happened to him, he wanted the home to go to Connors. Next, Connors points to Fontanarosa's testimony that he did put the home in Connors' name without requiring her to put any money toward the purchase of the home. Connors argues that Fontanarosa's testimony conflicts with statements he made later in his affidavit where he suggested that the title company made a mistake by putting her name on the deed. Finally, Connors points to her own affidavit where she stated that Fontanarosa gifted her an interest in the home as security.

**{¶33}** An appellate court reviews a summary judgment ruling de novo. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper.

**{¶34}** A court may grant summary judgment only when (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party. *Mercer v. Halmbacher*, 9th Dist. Summit No. 27799, 2015-Ohio-4167, ¶ 8; Civ.R. 56(C). The initial burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**{¶35}** If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts to show that there is a genuine issue of material fact. *Id.*; Civ.R. 56(E). "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346, 617 N.E.2d 1129 (1993).

**{¶36}** The parties here were survivorship tenants. Thus, this partition action is governed by R.C. 5307.01. In a partition action between survivorship tenants, the court must determine the share to which each is entitled as if the tenants were tenants in common. *Thrasher v. Watts*, 2d Dist. Clark No. 2012 CA 50, 2013-Ohio-2581, ¶ 12; R.C. 5307.05. If the deed is silent, there is a rebuttable presumption that the parties took equal interests in the property. *Thrasher*, at ¶ 12 citing *Bryan v. Looker*, 94 Ohio App.3d 228, 231, 640 N.E.2d 590 (3d Dist.1994). The court may then look beyond the deed to determine each party's equitable interest in the subject property. *Thrasher,* at ¶ 12. A party can rebut the presumption of equality by presenting evidence demonstrating unequal contributions toward the purchase price. *Id.*, citing *Spector v. Giunta*, 62 Ohio App.2d 137, 141, 405 N.E.2d 327 (6th Dist.1978). If the party can demonstrate unequal contributions, a presumption arises that the parties intended to share the property in proportion to the amounts they contributed. *Id.*

**{¶37}** The Warranty Deed at issue here is silent as to the interests of the parties. It simply states that the home is in the names of Fontanarosa and Connors, for their joint lives, the remainder to the survivor of them. (Fontanarosa Aff. Ex. 3). Thus, a rebuttable presumption initially arose that the parties took equal interests in the home.

**{¶38}** But Fontanarosa presented evidence of unequal contributions toward the purchase price. Fontanarosa averred that he alone provided three cashier's checks at closing in the amounts of $90,000.00, $46,834.97, and $250,000.00, representing the balance due to close on the home. (Fontanarosa Aff. ¶ 2; Ex. 2). He also averred that Connors did not provide any funds toward the purchase of the home. (Fontanarosa Aff. ¶ 5). Connors does not dispute these facts. Thus, a presumption arose that the parties intended to share the home in proportion to the amounts they contributed. In other words, a presumption then arose that Fontanarosa owned 100 percent of the home since he contributed 100 percent of the purchase price.

**{¶39}** Further evidence demonstrated that at the time of closing on the home, the title agent asked Fontanarosa how he would like to take title. (Fontanarosa Aff. ¶ 8). Fontanarosa responded that if something were to happen to him, he wanted the home to go to Connors. (Fontanarosa Aff. ¶ 9). Fontanarosa was not represented by counsel and did not review the deed prior to recording. (Fontanarosa Aff. ¶ 10). The real estate purchase agreement for the home identifies only Fontanarosa as the buyer. (Fontanarosa Aff. ¶ 15; Ex. 11). Additionally, after purchasing the home, the parties made approximately $12,000 worth of repairs and improvements to home and that Fontanarosa paid the entire amounts for these items too. (Fontanarosa Aff. ¶ 12; Exs. 4, 5, 6).

**{¶40}** The burden then moved to Connors to rebut the presumption that Fontanarosa was entitled to 100 percent of the home's value. But she was not able to do so. The evidence that Connors relies on is Fontanarosa's testimony on cross-examination during a February 21, 2018 domestic violence protection order hearing and her own self-serving statements.

**{¶41}** At the hearing, Fontanarosa testified that he purchased the home and it was titled by way of a survivorship deed to him and Connors. (Feb. 21, 2018 Tr. 10). He agreed that he did put Connors' name on the deed, but he was not sure that he would call it a gift. (Feb. 21, 2018 Tr. 13).

**{¶42}** This evidence does not create a genuine issue of material fact as Connors' suggests. Fontanarosa's testimony is not inconsistent with his affidavit or the documentary evidence he submitted. The fact that Fontanarosa agreed that he put Connors' name on the deed does not contradict his affidavit that he told the title agent that if something happened to him he wanted the home to go to Connors. And though he testified that the home was titled by way of a survivorship deed, this is simply a fact. It does not affect the issue of whether he requested a survivorship deed or not.

**{¶43}** In her affidavit, Connors stated that Fontanarosa gifted her an interest in the home as security. But the nonmoving party to a summary motion may not avoid summary judgment by simply submitting a self-serving affidavit that contradicts the moving party's evidence. *Belknap v. Vigorito*, 11th Dist. Trumbull No.2003-T-0147, 2004-Ohio-7232, at ¶ 26-27.

{¶44}    In sum, no genuine issue of material fact exists that prevents summary judgment in favor of Fontanarosa.

{¶45}    Accordingly, Connors' sole assignment of error is without merit and is overruled.

{¶46}    For the reasons stated above, the trial court's judgment is hereby affirmed.

Robb, J., concurs.

D'Apolito, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**