[Cite as *Westbrook v. Swiatek*, 2011-Ohio-781.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| WILLIAM WESTBROOK | : | JUDGES: |
| | : | |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellant | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 09CAE09-0083 |
| VALERIE SWIATEK, ET AL. | : | |
| | : | |
| | : | |
| Defendants-Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Delaware County Court of Common Pleas Case No. 06-CVH-08-683

JUDGMENT:     AFFIRMED

DATE OF JUDGMENT ENTRY:     February 14, 2011

APPEARANCES:

For Plaintiff-Appellant:

MARIBETH DEAVERS
CLINTON BAILEY
P.O. Box 469
10 S. Gay Street
Mt. Vernon, Ohio 43050

For Defendants-Appellees:

QUINTIN F. LINDSMITH
Bricker & Eckler, LLP
100 South Third Street
Columbus, Ohio 43215

*Delaney, J.*

{¶1} Plaintiff-Appellant William R. Westbrook ("Appellant') appeals several judgment entries and decisions of the Delaware County Court of Common Pleas regarding the disposition of certain legal claims he asserted against Appellees Valerie Swiatek, Victoria Bonner, Deborah Bonner (collectively "Bonner Daughters"), and Appellees ABL Group Ltd., Alum Creek, Inc., Cobbleton Bachman LLC, Cobbleton II, LLC, Rennob, Inc., SR 37 at Old State LLC and Whittington, Inc. (collectively "Bonner Companies").

## STATEMENT OF THE FACTS AND CASE

{¶2} This matter was originally filed on August 1, 2006, by Appellant as an action, for among other things, an accounting, and dissolution of a "joint venture/partnership agreement" between himself and Appellees. Appellant alleged a written "Memo of Understanding" ("MOU") memorialized the agreement. However, the MOU was between Appellant and Charles ("Bill") Bonner, a prominent Central Ohio land developer. The MOU was signed by both gentlemen, in their individual capacities, on or about June 24, 1999. The MOU was never formalized into a partnership or joint venture agreement.

{¶3} The general terms of the MOU were such that Mr. Bonner, either individually or through one of several Bonner Companies (referred to as Bonner Interests in the MOU), would provide the financing for the purchase of property found by and to be developed by Appellant. The pertinent terms of the MOU were as follows: Pursuant to the a "Standard Deal," wherein Appellant would receive 30% of the profits, the Bonner Companies would receive 65% and Michael Suhovecky (Mr. Bonner's

accountant) would receive 5%. A losing transaction would result in zero gain or loss to Appellant. On "Sour Deals" where there was money fronted but no deal made, the Bonner Companies would take 100% of the loss. Mr. Bonner could continue to do deals on his own, with or without Appellant. Mr. Bonner provided Appellant with administrative support such as office space and accounting services. Appellant was considered an employee of one of the Bonner Companies to the extent necessary to qualify Appellant under the corporation's health coverage plan. "The remainder of his status will be an independent contractor, associate, officer and/or partner depending on the particulars of each deal." (MOU, Working Relationship). Appellant also served as an officer of various Bonner Companies.

{¶4} Appellant and Mr. Bonner operated under the terms of the MOU until Mr. Bonner's death in September 2003. Before his death, Mr. Bonner reorganized the Bonner Companies' boards of directors and appointed the Bonner Daughters to the boards in addition to three outside directors. Appellant continued working on the pending real estate projects after Mr. Bonner died. According to the complaint, these projects include the Cobbleton Property, the Hummel Property, Woods at Cumberland, McCammon Chase Property, Lithopolis Property, Huntley Property, and Noble Property.

{¶5} In mid-2005, the relationship between the parties deteriorated. On June 25, 2005, Appellant was informed that the Bonner Daughters intended to downsize the active real estate development operations of the Bonner Companies and that the MOU was terminated with respect to the current projects, except the Cobbleton and Huntley properties. In September 2006, Appellant was informed he was no longer authorized to act in any representative capacity on either the Cobbleton or Huntley properties.

{¶6}   Shortly thereafter, this litigation ensued.   After the filing of the original complaint, Appellant sought the appointment of a receiver.  The trial court appointed a receiver in June 2007.   However, the appointment was vacated by this Court on December 10, 2008, in *Westbrook v. Swiatek*, 5th Dist. No. Case Nos. 07 CAE 09 0046, 07 CAE 11 0058, 2008-Ohio-6477 ("*Westbrook I").*  The Ohio Supreme Court declined jurisdiction to hear the case on April 22, 2009.

{¶7}   In the meantime, the litigation continued between the parties.  In 2007, the Bonner Companies asserted counterclaims against Appellant for breach of fiduciary duty and breach of contract arising from Appellant's role as an officer of Alum Creek, Rennob, and ABL Group and/or Whittington.   On August 9, 2007, Appellant filed an amended complaint adding claims for indemnification and advancement of legal expenses for defense of the counterclaims.

{¶8}   Also in 2007, the Bonner Companies filed a separate suit in Franklin County Court of Common Pleas against Appellant and Mr. Suhovecky, in their role as corporate officers and asserted claims of fraud, breach of contract and breach of fiduciary duty.  Ultimately, that suit was transferred and consolidated with this action in Delaware County.

{¶9}   In 2008, the trial court awarded attorney fees and expenses to Appellant in defense of the Bonner Companies' counterclaims, although the counterclaims were ultimately dismissed.  Appellees appealed the award to this Court, which dismissed the appeal for lack of a final, appealable order.   The Ohio Supreme Court declined jurisdiction to hear the case on August 28, 2009.

{¶10} Ultimately, Appellees refused to pay the fee award and were found in contempt of court. The contempt order was affirmed by this Court in *Westbrook v. Swiatek*, 5th Dist. No. 2009 CAE 05 0048, 2010-Ohio-2868 ("*Westbrook II"*). The Ohio Supreme Court declined jurisdiction to hear the case on October 27, 2010.

{¶11} Relevant to this appeal is a Second Amended Complaint filed by Appellant on February 12, 2008. This complaint sets forth the following claims against all Appellees, unless otherwise indicated:

{¶12} Count One: Declaratory Judgment

{¶13} Count Two: Action for Accounting

{¶14} Count Three: Dissolution and Winding Up of the Venture

{¶15} Count Four: Breach of Fiduciary Duty (Bonner Daughters only)

{¶16} Count Five: Injunctive Relief (Bonner Daughters only)

{¶17} Count Six: Appointment of Receiver

{¶18} Count Seven: Partition

{¶19} Count Eight: Breach of Contract (Bonner Daughters only)

{¶20} Count Nine: Unjust Enrichment

{¶21} Count Ten: Common Law and Statutory Indemnification and Contribution (Valerie Swiatek only)

{¶22} Count Eleven: Contractual Indemnification (Alum Creek, Rennob and Whittington only )

{¶23} Count Twelve: Immediate Order for Reimbursement and Ongoing Compensation

{¶24} Count Thirteen: Conversion (Bonner Daughters only)

{¶25} Count Fourteen: Breach of Fiduciary Duty in Connection with the Dominion Homes Closing (Bonner Daughters only)

{¶26} Count Fifteen: Punitive Damages (Bonner Daughters only)[1]

{¶27} On February 20, 2009, the Bonner Daughters and Bonner Companies collectively filed a motion for summary judgment as to all claims asserted by Appellant. In moving for summary judgment, the Appellees relied upon this Court's opinion in *Westbrook I;* the transcript of the receivership hearing held before the magistrate on May 11th and May 14th, 2007; and the deposition testimony of Appellant and Jerry Jordan (a close friend of Mr. Bonner and a member of the Bonner Companies' Board of Directors).

{¶28} On July 8, 2009, the trial court granted summary judgment in favor of Appellees as to Count One (in part), Two, Three, Four, Five, and Thirteen finding that there was no genuine issue as to any material fact regarding whether a partnership or joint venture existed between the parties. The trial court, however, specifically denied summary judgment as to Appellant's claim for a declaratory judgment regarding his interest in the profits of the properties as alleged in Count One. (Judgment Entry, July 8, 2009, p. 15).[2]

{¶29} Further, the trial court granted summary judgment in favor of Appellees as to Counts Six, Seven, Nine, Ten, Fourteen, and Fifteen. The trial court, however, denied summary judgment as to Counts Eight, Eleven, and Twelve.[3]

---

[1] Count Fifteen is not at issue in this appeal.
[2] This remaining portion of Count One was voluntarily dismissed prior to trial.
[3] Counts Eleven and Twelve regarding indemnification and reimbursement were addressed by this Court in *Westbrook II* and are not at issue in this appeal.

On July 31, 2009,[4] the trial court held a pretrial conference. At that time Count Eight, the breach of contract claim based upon the MOU, was pending before the trial court. Appellees maintained that the breach of contract claim was asserted in the Second Amended Complaint only against the Bonner Daughters in their individual capacities and not the Bonner Companies. Appellees also argued that the MOU was between the Appellant and Bonner Companies, not the Bonner Daughters. In continuing to operate under the MOU, the Bonner Daughters argued they acted in their capacity as corporate officers of the Bonner Companies and not as individuals.

{¶30} Faced with this situation, Appellant took several steps. First, he sought reconsideration of the decision to grant summary judgment in favor of the Bonner Daughters on the unjust enrichment claim. The trial court summarily denied the motion for reconsideration.

{¶31} Second, Appellant orally moved at the final pretrial to amend his complaint to state a breach of contract claim against the Bonner Companies. The trial court again summarily denied the motion to amend.

{¶32} Third, Appellant moved the trial court to reconsider the granting of summary judgment in favor of the Bonner Companies on the unjust enrichment claim. The trial court refused to do so.

{¶33} On August 11, 2009, the claim of breach of contract against the Bonner Daughters proceeded to a jury trial. At trial, Appellant asserted he had partnership with Mr. Bonner and that the partnership continued after his death with the Bonner Daughters. Appellant argued the Bonner Daughters were individually liable for the value of all the man-hours of time he had invested in the Cobbleton and Huntley

---

[4] Further pretrial proceedings were also held on August 6, 2009.

projects, which amounted to 5,385 hours, at $150.00 per hour, for a total amount of $807,750.

{¶34} After hearing three days of testimony, the trial court granted the Bonner Daughters' motion for directed verdict pursuant to Civ.R. 50(A) and entered judgment in their favor.

{¶35} Appellant appealed and raises five Assignments of Error:

{¶36} "I. THE TRIAL COURT ERRED IN DIRECTING THE VERDICT IN FAVOR OF APPELLEES ON APPELLANT'S COUNT EIGHT.

{¶37} "II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUGDMENT TO APPELLEES ON APPELLANT'S COUNTS ONE, TWO, THREE, FOUR, FIVE, SEVEN, TEN, THIRTEEN AND FOURTEEN.

{¶38} "III. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEES ON APPELLANT'S COUNT NINE.

{¶39} "IV. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT OVERRULED APPELLANT'S MOTION TO AMEND THE SECOND AMENDED COMPLAINT TO ASSERT A CLAIM AGAINST THE BONNER COMPANIES FOR BREACH OF CONTRACT.

{¶40} "V. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR RECONSIDERATION OF ITS COUNT NINE."

{¶41} For ease of organization, we will address Appellant's Assignments of Error as follows. We will first review Assignment of Error Two; followed by Assignments of error Four then One; and conclude by addressing Assignments of Error Three and Five together.

**II.**

{¶42} Within this assignment of error, Appellant maintains that the trial court erred in granting summary judgment as to several claims asserted in Second Amended Complaint.

{¶43} We review a summary judgment de novo and without deference to the trial court's determination. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard of review as the trial court and conducts an independent review, without deference to the trial court's determination. We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it.

{¶44} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."

{¶45} The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court, which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Dresher v. Burt,* 75 Ohio St.3d 280, 292, 1996-Ohio-107, 662 N.E.2d 264. The nonmoving party then has a reciprocal burden of specificity and cannot rest on the allegations or denials in the pleadings, but must set forth "specific facts" by the means listed in Civ.R. 56(C) showing that a "triable issue of fact" exists. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801.

{¶46} Applying this standard, we will address the claims as follows.

COUNTS ONE, TWO, THREE, FOUR, FIVE AND THIRTEEN

{¶47} Within these Counts, Appellant sought a declaration of the nature of the business relationship between Appellant and Appellees. Appellant alleged that his relationship with Mr. Bonner was as "equal co-venturers" as to all development decisions, including the decision of which property to acquire, how to develop, and the marketing and sales of the real property which the venture acquired. (Second Amended Complaint, ¶25). He further alleged that after Mr. Bonner's death, the Bonner Daughters, as individuals, continued and or joined the venture, and acknowledged and ratified the obligations to Appellant. (Id. at ¶29).

{¶48} Appellant sought declaratory and injunctive relief that he was entitled to equal rights to manage and control the venture properties. He also sought an action for accounting, dissolution, and winding up of the "venture" under R.C. Chapter 1775, Ohio's Uniform Partnership Law, as result of the Bonner Daughters' desires and breach of the MOU. He claimed the Bonner Daughters breached fiduciary duties owing under the venture relationship. Lastly, he sought a partition of the venture properties as "joint owner" and "co-venturer."

{¶49} Appellees argue there was never a partnership or joint venture between Appellant and the Bonner Daughters. Appellees rely, in part, upon the law and facts of this case as set forth by this Court in *Westbrook I.* However, Appellant argues there is a genuine issue of fact as to whether Appellant had a partnership or joint venture with the Bonner Daughters. Appellant contends the trial court misapplied the law of the case doctrine in ruling upon the motion for summary judgment.

{¶50} The doctrine of the law of the case provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels. *Nolan v. Nolan* (1984), 11 Ohio St.3d 1, 3, 462 N.E.2d 410. Upon remand, where a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law. Id.

{¶51} In *Westbrook I,* this Court set forth a general review of partnership and joint venture law and reversed the appointment of a receiver because Appellant did not establish by clear and convincing evidence a probable right or interest in the properties at issue. We remanded the case for further proceedings.

{¶52} In ruling upon summary judgment, the trial court correctly noted it "must adhere to the appellate court's determination of the applicable law in this case." The trial court also observed that Appellant did not dispute that Counts One through Five and Count Thirteen were dependent upon finding that partnership or joint venture exists. Rather, Appellant simply disagreed with the law applied by this Court and did not submit any additional evidence to the trial court. Therefore, the trial court was correct in its application of the law of the case doctrine; however, because our standard of review is de novo we will address the substantive issues set forth by the parties.

{¶53} In Ohio, a partnership is defined as "an entity of two or more persons to carry on as co-owners of a business for profit…" R.C. 1775.05.[5] Receipt by a person of a share of the profits of a business is prima-facie evidence that he is a partner in the

---

[5] Ohio's Uniform Partnership Act, R.C. Chapter 1775, was repealed January 1, 2010; however, it was effective during the times relevant herein.

business unless those profits were received in payment as a debt, wages, etc. R.C. 1776.06(D). However, the sharing of profits is not alone conclusive of the existence of a partnership relation in the absence of other essential elements of partnership. *Ehrhardt v. Abbate*, 8th Dist. No. 79679, 2002-Ohio-2716; *Frangos v. Chavez,* 8th Dist. No. 69992, 1997 WL 37768, citing *Berger v. Dare* (1994), 99 Ohio App.3d 103, 106.

{¶54} A partnership exists where there is "[1] an express or implied partnership contract between the parties; [2] the sharing of profits and losses; [3] mutuality of agency; [4] mutuality of control; and [5] co-ownership of the business and of the property used for partnership purposes or acquired with partnership funds." *Grendell v. Ohio EPA* (2001) 146 Ohio App.3d 1, 13, 764 N.E.2d 1067, citing *Anchor v. O'Toole*, 94 F.3d 1014, 1024 (6th Cir. 1996). In the absence of a written partnership agreement, an implied partnership can be found from the totality of attendant facts and circumstances. *Madden Investment Co. v. Stephenson's Apparel*, 162 Ohio App.3d 51, 2005-Ohio-3336, citing *Ehrhardt*, supra.

{¶55} The Supreme Court of Ohio has defined a joint venture as follows:

{¶56} A joint venture is " * * * an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill and knowledge, *without creating a partnership*, and agree that there shall be a community interest among them as to the purpose of the undertaking, and that each coadventurer shall stand in the relation of principal, as well as agent, as to each of the other coadventures * * *." *Al Johnson Construction Co. v. Kosydar*, 42 Ohio St.2d 29, 325 N.E.2d 549, quoting *Ford v. McCue* (1955), 163 Ohio St. 498, 127 N.E.2d 209.

(Emphasis added). Accordingly, by definition, a joint venture cannot involve the creation of partnership.

{¶57} At this juncture, we make the initial observation that Appellant testified unequivocally in his deposition and at the receivership hearing, that he had a partnership with each Bonner Daughter. He states the daughters, by continuing to operate under the MOU, replaced Mr. Bonner as a partner in what Appellant referred to as the "Westbrook-Bonner Venture."

{¶58} However, Appellant acknowledged that when he referred to a joint venture in his testimony, he was referring to the partnership. He also acknowledged that the Bonner Daughters did not specifically agree, verbally or in writing, to be partners with him. Appellant further testified the Westbrook-Bonner Venture never filed any documents with the Ohio Secretary of State as to the partnership formation, never secured a tax identification number, and never held any property in the partnership name. He also never signed any documents as a partner. Finally, any profits received by Appellant under the MOU were paid by the Bonner Companies, not the Bonner Daughters or Westbrook-Bonner Venture, and not reported as either K-1 partnership income, but as capital gains or miscellaneous Form 1099 income.

{¶59} It is also undisputed in this case that all the real property at issue was owned by the Bonner Companies and Appellant had no ownership interest in the land. It was also conceded by Appellant that the Bonner Daughters had little or no knowledge or practical experience in real estate development or project management.

{¶60} The issue faced by this Court is whether the evidence presents a genuine issue of material fact as to whether the relationship between Appellant and the Bonner

Daughters was a partnership recognized under Ohio law. For the following reasons, we find that many elements of a partnership are absent in the case at bar.

{¶61} We begin our analysis by noting there is no written document binding the Bonner Daughters to the MOU nor is there any evidence the Bonner Companies, by corporate resolution, entered into a partnership with Appellant. The MOU itself does not define the unique relationship between Appellant and Mr. Bonner; instead, Appellant's status was to be defined by each real estate deal.

{¶62} Appellant considered himself the sweat equity or operating partner and Mr. Bonner the financing partner. He explained that once Mr. Bonner approved the financing of a land purchase with Bonner Companies' assets, Appellant would oversee the eventual development of the property, including obtaining zoning and purchasers of lots. However, he did not have the authority to sell property or sign contracts; instead, he would bring any proposals to Mr. Bonner and/or the board of directors for review and approval. If the particular deal eventually made a net profit, the profits would be divided by the terms of the MOU. If a loss occurred, the MOU provided that the Bonner Companies took 100% of the loss. There is no provision in the MOU for Appellant to receive hourly compensation based upon his sweat equity in any particular deal.

{¶63} Upon Mr. Bonner's death, Mr. Jordan testified at the receivership hearing that the Bonner Companies stepped into the position of Mr. Bonner. He also testified that neither Mr. Bonner nor Appellant referred or indicated that the MOU created a partnership with Mr. Bonner or the Bonner Daughters.

{¶64} It is undisputed that Appellant continued to operate and manage developments after Mr. Bonner's death. He received net profits and draws against

anticipated profits from checks drawn on Bonner Companies' accounts. In addition, the evidence produced in regards to the specific real estate developments reflects Appellant acted in a corporate capacity as an officer of a Bonner Company, as opposed to a partner of the Bonner Daughters.

{¶65} Although Appellant testified that he and Mr. Suhovecky believed themselves to be partners with the Bonner Daughters, the formation of a partnership requires an intention to form a relationship that includes the essential elements of a partnership, which clearly did not exist sub judice. There is no evidence in the record that Appellant acted as a partner having the authority to bind the alleged Westbrook-Bonner Venture partnership or that the partnership took ownership and/or control of any property at issue. The parties did not pay taxes as a partnership. There is no evidence the Bonner Daughters mutually assented to the formation of a partnership; in fact, they testified they did not agree to such an arrangement. Although Appellant received a share of the net profits for certain projects, the profits were shared with the Bonner Companies, not the Bonner Daughters.

{¶66} We accordingly conclude the trial court did not err in granting summary judgment in favor of Appellees as to Counts One through Five and Count Thirteen because no genuine issue of material fact remains to be litigated which could establish the existence of the elements essential to the formation of a partnership.

<u>COUNT SEVEN</u>

{¶67} Appellant sought a partition of the real estate at issue in Count Seven of the Second Amended Complaint. He alleged he is a joint owner and has a right to possess the venture properties.

{¶68} R.C. 5307.01 provides that tenants in common, survivorship tenants, and coparceners of real estate may be compelled to partition land. In order to obtain partition, the plaintiff must have title to some part of the real estate and be in possession of the property or have an immediate right to possession. *Bryan v. Looker* (1994), 94 Ohio App.3d 228, 231, 640 N.E.2d 590.

{¶69} Appellant argues his interest in the properties is by virtue of a partnership and/or joint venture. However, as set forth above, the undisputed evidence establishes that the Bonner Companies were the titled owners of the land and Appellant failed to establish the essential elements of a partnership.

{¶70} Accordingly, the trial court did not err in granting summary judgment in favor of Appellees as to Count Seven.

## COUNTS TEN AND FOURTEEN

{¶71} In Count Ten of the Second Amended Complaint, Appellant asserted a claim for indemnification and/or contribution against Appellee, Valerie Swiatek based upon a counterclaim asserted by Appellee, ABL Group against Appellant.

{¶72} In Count Fourteen, Appellant alleged the Bonner Daughters breached fiduciary duties in connection with a real estate closing that was to occur when the receivership was in place.

{¶73} However, this Court finds that in light of ABL Group's dismissal of the counterclaim and this Court decision in *Westbrook I*, these claims are rendered moot.

{¶74} For all of these reasons, Appellant's Second Assignment of Error is therefore overruled.

**IV.**

{¶75} In his Fourth Assignment of Error, Appellant argues that the trial court erred in denying his motion to amend his complaint a third time to allege a breach of contract claim (of the MOU) against the Bonner Companies. This request was made near the eve of trial.

{¶76} The Second Amended Complaint filed on February 12, 2008, contains the following:

<u>Count 8: Breach of Contract</u>

"80. The individual Defendants ratified or otherwise bound themselves to the terms of the Memo of Understanding and operated under the terms of the Memorandum of Understanding from approximately August 2003 until September 2006. They are therefore bound by its written and unwritten terms, as ratified by them and as evidenced by the course of performance throughout those three years (the "Contract").

"81. The Individual Defendants have breached the Contract by, among other things, refusing to provide office and limited secretarial services, refusing to provide medical coverage to Westbrook, and testifying under oath in this action that they will never distribute to Westbrook the profits from the development of the Cobbleton and Huntley Properties which are due to Westbrook under the Contract.

"82. As a proximate result of the Individual Defendants' breach of Contract, Westbrook has suffered and will continue to suffer money damages in an amount exceeding $25,000."

{¶77}  It appears from the face of the Second Amended Complaint that Count Eight is asserted only against the Bonner Daughters and not the Bonner Companies. Appellant tried to correct this at the final pretrial conference by moving to amend the complaint.  The trial court denied the request without opinion.

{¶78}  Civ.R. 15(A) provides that a party may seek leave of court to amend its pleading and that leave "shall be freely given when justice so requires."  While Civ.R. 15(A) encourages liberal amendment, "motions to amend pleadings pursuant to Civ.R.15(A) should be refused if there is a showing of bad faith, undue delay, or undue prejudice to the opposing party."  *Turner v. Central Local School Dist.* (1999), 85 Ohio St.3d 95, 99, 706 N.E.2d 1261.  The decision of whether to grant or deny a motion to amend is within the trial court's discretion, an appellate court reviews such a ruling under an abuse of discretion standard.  *Wilmington Steel Products, Inc. v. Cleveland Elec. Illuminating Co.* (1991), 60 Ohio St.3d 120, 122, 573 N.E.2d 622.

{¶79}  Appellant argued before the trial court that Count Eight "has always been against the corporate entities for breach of contract as well."  (Pretrial Conference, T. 107).  The trial court conceded it understood the breach of contract claim was against the corporations, and not until the final pretrial conference, did it understand it was against the individuals only.  (Id. at 112).[6]

{¶80}  However, the record reflects that the Bonner Daughters moved for summary judgment on February 20, 2009, as to Count Eight "which asserts a breach of contract claim against Victoria Bonner, Valerie Swiatek, and Deborah Bonner individually for their alleged personal breach of the Memo of Understanding."  Appellant

---

[6]  The trial court aptly noted that confusion was created because the parties often referred collectively to "defendants" rather than specifically referring to the Bonner Daughters and the Bonner Companies.

opposed the summary judgment by asserting that the Bonner Daughters ratified the MOU.

{¶81} It appears to this Court that Appellee's counsel concession at the final pretrial that "there was an agreement between [Appellant] and the [Bonner] companies as to how he was paid" spurred Appellant to then claim Count Eight was also asserted against the Bonner Companies. In fact, Appellant argues in his brief to this Court "for the first time in the almost three year history of this matter, counsel for the Bonner daughters admitted that the MOU was between Westbrook and the Bonner companies." (Appellant's Brief, p. 27). Given this admission, Appellant also claims the trial court abused its discretion by barring the claim from going forward against the Bonner Companies to "conform to the evidence" under Civ.R. 15(B). Civ.R. 15(B) provides: "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."

{¶82} Initially, we note a party must move to amend in a timely manner. Appellant attempted to add a new claim eighteen months after the initial pleading and after Appellees had already filed a motion for summary judgment, which arguably put Appellant on notice that Count Eight was asserted only against the Bonner Daughters. This factor weighs heavily against permitting the amendment.

{¶83} Appellant did not demonstrate he was prevented from conducting discovery on this issue over the three years the case had been pending; nor did he seek to re-open discovery to allow him to further depose Appellees to refute opposing counsel's statement. We also must note that the breach of contract claim went to trial against the Bonner Daughters and Appellant testified under oath that the MOU was a

personal agreement between himself and the Bonner Daughters (as set forth *infra*). Even though the Bonner Daughters testified at trial the MOU was an agreement between the Bonner Companies and Appellant, Appellant did not timely move to amend the pleadings to conform to said evidence pursuant to Civ.R. 15(B).

{¶84} Accordingly, we can find no abuse of discretion by the trial court in denying Appellant's pretrial motion to amend. Appellant's fourth Assignment of Error is overruled.

## I.

{¶85} Following jury trial, the trial court entered judgment in favor of the Bonner Daughters and against Appellant on the breach of contract claim. In the First Assignment of Error, Appellant argues the trial court erred in granting the Bonner Daughters' motion for directed verdict because there is a genuine issue of fact as to whether or not the MOU was between Appellant and the Bonner Daughters in their individual capacities or in their capacity as officers of the Bonner Companies.[7]

{¶86} A trial court can grant a motion for a directed verdict only after finding that reasonable minds could reach but one conclusion on any determinative issue and that conclusion is adverse to the party opposing the motion. Civ.R. 50(A)(4). This "reasonable minds" test calls upon a court to determine only whether there exists any evidence of substantial probative value in support of the claims of the non-moving party. *Akers v. Saulsbury*, 5th Dist. No. 2008-CAE-12-0070, 2010-Ohio-4965, ¶10. We must construe the evidence most strongly in favor of the party against whom the motion is made and neither weigh the evidence nor determine the credibility of the witnesses in

---

[7] Neither Appellant nor Appellees provide any citations to relevant authorities to support their substantive contentions in this Assignment of Error.

ruling upon a motion.  Id.  Our review of the trial court's disposition of the motion is de novo.  Id.

{¶87}  The trial testimony in this case discloses that the MOU served the goal of Mr. Bonner and Appellant in conducting successful real estate development for over four years.  The Bonner Companies held title to the land, employed Appellant for the purpose of providing office space and health insurance, and distributed profits.  However, there was simply no evidence adduced that Mr. Bonner or his daughters, agreed to assume personal liability in any undertaking between the parties, including compensation to Appellant for man-hours spent on the Cobbleton and Huntley projects.

{¶88}  Appellant's theory that the Bonner Daughters spoke as individuals, as opposed to corporate officers, in speaking with their attorneys and fellow board members; as well as testifying at depositions, was not deemed by the trial court to be substantial, probative evidence that these individuals exposed themselves to the risk of personal liability.  Appellant's theory also appears counter-intuitive to the testimony of his own witnesses, Mr. Jordan and Mr. Suhovecky, that Appellant and Mr. Bonner were gifted and sophisticated businessmen who structured their relationship to afford limited risk, tax liability, and flexibility.

{¶89}  The undisputed evidence further reflects that Mr. Bonner deliberately choose to conduct his performance under the MOU through the Bonner Companies, and not individually, and this approach was continued by his daughters after his death.

{¶90}  Accordingly, we conclude the trial court did not err in directing a verdict on the breach of contract claim.

{¶91}  The First Assignment of Error is overruled.

**III., IV.**

{¶92}  In the Third and Fifth Assignments of Error, Appellant argues that the trial court erred in originally granting summary judgment in favor of Appellees on the unjust enrichment claim that was asserted in Count Nine.  Appellant contends that the trial court should have reconsidered its summary judgment ruling prior to trial.

{¶93}  In Count Nine, Appellant asserts that he contributed at least 5,100 hours to the development of the Cobbleton Property and contributed substantial amounts of time to the development of the Huntley Property.  He asserts he was not paid for the hours he devoted to the development of these properties and that the Appellees refused to pay him.  Appellant further asserts he conferred a benefit upon the Appellees in providing his expertise and services in the development of these properties without payment and he now seeks compensatory damages.

{¶94}  Appellees argue Appellant cannot alternatively pursue an unjust enrichment claim because he alleges an express contract, the MOU, governs the parties' relationship.  The trial court agreed, observing:

{¶95}  "While the parties in this case do not agree that the Memo of Understanding forms the basis of any partnership or joint venture, there is agreement that it governs how Westbrook is to be paid in the event there is a profit from the sale of the properties.  Since the parties agree on this, the Memo of Understanding is an express, written document that governs Westbrook's payment.  Therefore, Westbrook cannot pursue a claim for his percentage of profits based upon the Memo of Understanding and a claim for compensation for the hours he has spent developing the properties under the theory of unjust enrichment."  (July 8, 2009 Judgment Entry, p. 21).

{¶96} In granting summary judgment, the trial court relied upon this Court's decision in *Delicom Sweet Goods of Ohio, Inc. v. Mt. Perry Foods, Inc.*, 5th Dist. No. 04 CA 4, 2004-Ohio-6645, ¶31, wherein we upheld the granting of summary judgment as to a plaintiff's unjust enrichment claim because "unjust enrichment operates in the absence of an express contract" and since express contracts existed in the case, we concluded that summary judgment was properly granted.

{¶97} As stated earlier, our standard of review on summary judgment rulings is de novo.

{¶98} The equitable doctrine of unjust enrichment or quantum meruit is generally applied when one party confers some benefit upon another without receiving just compensation for the reasonable value of services rendered. *Aultman Hosp. Assn. v. Cmty. Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 55, 544 N.E.2d 920, citing *Ullman v. May* (1947), 147 Ohio St. 468, 72 N.E.2d 63, paragraph three of the syllabus. However, where a contract describes the nature of services to be rendered and the compensation to be paid, the contract affords the appropriate relief and the equitable doctrine is inapplicable. *Ullmann,* 147 Ohio St. at 477-478.

{¶99} Pertinent to this appeal, the MOU provides that if a profit is made on a particular deal, the profits are to be divided among the Appellant, the Bonner Companies and Mr. Suhovecky. Given this language, we find the MOU sets forth the terms of Appellant's compensation, which is not distinct from the remedy that Appellant seeks under the unjust enrichment claim. Consequently, Appellant cannot recover the value of his services under a theory of unjust enrichment because of the existence and reliance upon the MOU. The trial court did not err when it granted Appellees' motion for

summary judgment on that basis and thereafter overruled Appellant's motion for reconsideration.

{¶100} Appellant's Third and Fifth Assignments of Error are overruled.

{¶101} Having overruled all of Appellant's Assignments of Error, the judgments of the trial court are affirmed.

By: Delaney, J.

Farmer, P.J. and

Wise, J. concur.


           HON. PATRICIA A. DELANEY


           HON. SHEILA G. FARMER


           HON. JOHN W. WISE

[Cite as *Westbrook v. Swiatek*, 2011-Ohio-781.]

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO

FIFTH APPELLATE DISTRICT

WILLIAM WESTBROOK                          :
                                           :
       Plaintiff-Appellant             :
                                           :
                                           :
-vs-                                       :     JUDGMENT ENTRY
                                           :
VALERIE SWIATEK, ET AL.                    :
                                           :
       Defendant-Appellees             :     Case No.  09CAE09-0083
                                           :

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgments of the Delaware County Court of Common Pleas are affirmed. Costs assessed to Appellant.

_____
HON. PATRICIA A. DELANEY

_____
HON. SHEILA G. FARMER

_____
HON. JOHN W. WISE