[Cite as *Tecco v. Iconic Labs, L.L.C.*, 2022-Ohio-2041.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| DONALD TECCO, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 110864 |
| v. | : | |
| ICONIC LABS, LLC, ET AL., | : | |
| Defendants-Appellees. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 16, 2022

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-931299

### *Appearances:*

Cohen Rosenthal & Kramer LLP, and Joshua Cohen, *for appellant*.

Brouse McDowell, LPA, Michael P. O'Donnell, Christopher J. Carney, and David Sporar,*for appellees*.

SEAN C. GALLAGHER, A.J.:

{¶ 1} Plaintiff-appellant Donald Tecco ("Tecco") appeals the judgment of the trial court granting summary judgment on Tecco's claims in favor of defendants-appellees Iconic Labs, LLC ("Iconic") and Travis Bennett ("Bennett") (collectively "appellees"). Upon review, we affirm the judgment of the trial court.

## I. Background

{¶ 2} In March 2020, Tecco filed a complaint against Iconic and Bennett, and Tecco was later granted leave to file an amended complaint. The amended complaint raised claims for "breach of contract — ownership," "breach of contract — commissions," and "promissory estoppel."

{¶ 3} Among other allegations, Tecco alleged that in fall 2016, Bennett approached him about selling products for a new company; the two discussed forming Iconic and allegedly agreed they would share proceeds and/or compensation equally; in July 2017, Tecco began selling full time for Iconic and Bennett offered Tecco to be 50 percent partners in Iconic; in October 2017, Bennett filed paperwork with the Ohio Secretary of State for Iconic; and Tecco allegedly "had partnership interests" in Iconic "since its formation in October of 2017." Tecco also alleged that he directed Bennett on how to form the company, which allegedly was to include Tecco as 50 percent owner, but the documents filed with the Ohio Secretary of State made no mention of Tecco. Tecco further alleged that Bennett referred to Tecco as a partner and gave Tecco assurances that the two would sign a formal legal document acknowledging Tecco's 50 percent interest, but after Iconic closed a large contract with Honeywell, Bennett took the position in March 2019 that Tecco was merely an employee of Iconic.

{¶ 4} Tecco alleged under his claim for "breach of contract — ownership" that the parties "entered into an oral agreement under which Tecco would receive a 50% interest in Iconic along with an equal split of compensation with Bennett in

exchange for Tecco's efforts in forming the company and in securing contracts for its products" and that appellees "breached this agreement by refusing to create, acknowledge, or recognize Tecco's 50% interest along with an equal split of compensation with Bennett." Tecco also alleged claims for breach of contract to recover commissions and promissory estoppel.

{¶ 5} Appellees filed an answer along with a counterclaim for declaratory judgment and tortious interference with a business relationship. Appellees also filed an answer to the amended complaint.

{¶ 6} On April 15, 2021, appellees filed a motion for summary judgment. In moving for summary judgment, appellees argued that there was no oral partnership agreement and that they were entitled to summary judgment on all of Bennett's claims. Appellees referred to the deposition of Bennett, in which he stated he "was always sole 100 percent owner[,]" and he had offered to make Tecco a minority owner of Iconic, but "all times * * *, he declined or the negotiations never came to fruition." Bennett understood that Tecco wanted the flexibility to work for other companies while he also worked for Iconic. According to Tecco's deposition, in January 2019, he proposed that ownership of Iconic be split 50/50 between him and Bennett, but Bennett would say he's 51 percent and "if that was the rift, 51/49, when it came down to finalizing the agreement, * * * we would work that out at that point in time." Appellees further argued that there was no evidence of an oral partnership agreement. They referred to the record, which reflects the parties never entered an operating agreement; Tecco did not incorporate Iconic; Tecco never made any

capital contribution other than a 26-day $30,000 short-term loan; Tecco never signed tax returns on behalf of Iconic; Tecco never shared in Iconic's losses; Tecco never received an owner's distribution of profits; and Tecco was paid as a W-2 employee. Also, Tecco conceded in his deposition that he was paid for services rendered, but he believed he was deserving of 50 percent of Iconic's profits. According to appellees, in March 2019, after Iconic secured a significant customer contract, Tecco began insisting he was a partner, but Bennett did not agree. Appellees argued there never was any meeting of the minds and "[Tecco] merely 'assumed' or 'believed' he had an oral partnership agreement with Bennett under which they shared ownership of Iconic equally, and 'trusted' that Bennett viewed the matter the same way."

{¶ 7} In opposing summary judgment, Tecco framed his claim as one for breach of an executory contract to create a partnership. Tecco indicated that he "has sued because Bennett has 'refus[ed] to create' the contemplated partnership, not because the Defendants violated the terms of some partnership agreement that put it into existence." Tecco argued that an issue of fact was presented as to whether there had been a meeting of the minds. He claimed that in late 2016 or early 2017, he and Bennett reached an agreement to create a 50/50 partnership and they intended to work out logistical details in the future when they would formalize and document their partnership arrangement. He argued that the parties agreed to keep Tecco's name temporarily off the filing with the Ohio Secretary of State because Tecco was involved in pending employment litigation. In support of his position

that there was a meeting of the minds for an agreement to form a partnership, Tecco referenced (1) Bennett's identification of Tecco as a partner in communications with Iconic's suppliers, employees, and potential customers, including an email where Bennett stated to a prospective customer that Tecco "is my partner with Iconic Labs. I am sure he would be willing to connect you * * *."; (2) an email exchange between Tecco and Bennett in December 2017 regarding a deal with Honeywell in which Bennett states "[y]ou and I are going to get 200K a piece a year and still have funds to get EpiFreeze made and fund production runs of the lens care products"; (3) the creation of a "capital account" for Tecco in January 2019 after Tecco paid approximately $30,000 in outstanding invoices Iconic had received from a supplier; and (4) an October 2018 email exchange in which Tecco indicated "the time has come for us to finalized [sic] our LLC operating agreements and set up this partnership properly" and suggested getting a business attorney, to which Bennett was silent and did not disavow. Tecco maintained that the lack of agreement on partnership terms did not defeat his claims.

{¶ 8} In their reply, appellees argued that Tecco's claim for breach of an oral executory contract failed as a matter of law because Tecco had maintained he was a partner the entire time. Appellees further argued that there was never any "meeting of the minds" to form an executory contract. In Tecco's deposition, he expressed his belief that he was a partner in Iconic and maintained he and Bennett were "partners from fall of 2016 through early 2019 * * *." Tecco stated he "deemed myself I was a partner." Despite his "assumption," he also acknowledged there was

no operating agreement, no documents were finalized, and he never saw a tax distribution from Iconic. Rather, Tecco was paid a salary and commissions, he received a W-2, and he never complained about payment amounts. According to Tecco's deposition, he made a "short-term loan" to the company, but he did not make any "specific investment." Appellees also referred to Bennett's statements during his deposition that the "200k a piece" was in reference to "per SKU" and not in reference to being divided or sharing profits equally; the capital account was created for a "reimbursable expense" as was done for other employees that incurred expenses on behalf of Iconic; and Bennett did not refer to Tecco as a partner in a legal sense. Further, Bennett stated in his affidavit that before he filed Iconic's articles of incorporation, he offered Tecco a 49 percent ownership interest, but Tecco declined because he did not want to fund a proportionate amount of money into the company. Bennett also referred to 2019 email responses denouncing Tecco's assertion of being a partner, indicating to Tecco "[You're] not a 50% partner" and "You aren't an owner you are an employee. That is the way it has been since I incorporated in October 2017."

{¶ 9} The trial court granted appellees' motion for summary judgment. In a well-reasoned opinion, the trial court addressed the issue of "whether there is sufficient evidence of a meeting of the minds that a partnership, or an executory contract to form a partnership, was created." The trial court considered the arguments and evidence presented and concluded as follows: "In construing the evidence in a light most favorable to Tecco, the court does not find that the behavior

of the parties evidences an intent to form a partnership or the existence of a partnership." The trial court specifically found that "Tecco has failed to demonstrate that a meeting of the minds" of the parties occurred. After determining Tecco's remaining claims failed, the trial court granted judgment in favor of appellees on all claims raised in Tecco's amended complaint. The trial court included Civ.R. 54(B) "no just cause for delay" language in the opinion.

{¶ 10} Tecco timely filed this appeal.

## II. Law and Analysis

{¶ 11} Tecco's sole assignment of error challenges the trial court's decision to grant summary judgment in favor of appellees on his claim for breach of an executory agreement to create a partnership.[1]

{¶ 12} Appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56. *Argabrite v. Neer*, 149 Ohio St.3d 349, 2016-Ohio-8374, 75 N.E.3d 161, ¶ 14, citing *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, 936 N.E.2d 481. ¶ 29. Summary judgment is appropriate "only when no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and, viewing the evidence in the light most favorable to the nonmoving party, reasonable minds can reach a conclusion only in favor of the moving party." *Id.*, citing *M.H. v. Cuyahoga Falls*, 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261, ¶ 12; Civ.R. 56(C).

---

[1] Because Tecco admittedly has not challenged the trial court's summary judgment ruling on his other claims, we do not address them herein.

{¶ 13} As an initial matter, appellees raise the issue of whether Tecco's claim for breach of an oral executory contract to form a partnership was properly pled. They also claim that even if this claim was pled, that it must fail because Tecco testified that he believed he was always a partner. However, there is no indication in the record that these issues were raised in the trial court. Generally, "a party cannot raise new arguments and legal issues for the first time on appeal, and [the] failure to raise an issue before the trial court waives that issue for appellate purposes." *Walker v. State*, 8th Dist. Cuyahoga No. 109450, 2021-Ohio-843, ¶ 24, citing *Miller v. Cardinal Care Mgt.*, 8th Dist. Cuyahoga No. 107730, 2019-Ohio-2826, ¶ 23. Furthermore, "an appellate court limits its review to issues actually decided by the trial court in its judgment." *Lycan v. Cleveland*, 146 Ohio St.3d 29, 2016-Ohio-422, 51 N.E.3d 593, ¶ 21, citing *Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 89, 585 N.E.2d 384 (1992). Therefore, we will not consider the issues presented by appellees.

{¶ 14} We shall proceed to address Tecco's challenge to the trial court's summary judgment ruling on his claim for breach of an oral executory contract to form a partnership. The trial court considered whether there was sufficient evidence of a meeting of the minds that a partnership, or an executory contract to form a partnership, was created. The trial court, considering the evidence in a light most favorable to Tecco, was unable to find that the behavior of the parties evidenced an intent to form a partnership or the existence of a partnership. The court also found

Tecco failed to establish a genuine issue of material fact with respect to a meeting of the minds.

{¶ 15} On appeal, Tecco "readily concedes that he and Bennett never consummated their creation of a partnership," and he maintains his claim arises "from Bennett's refusal to proceed with creation of their partnership * * *." The most recent authority in Ohio he cites in support of such a claim is the 1949 case of *Tritsch v. Bach*, 87 Ohio App. 19, 93 N.E.2d 333 (1st Dist.1949), syllabus. Assuming such a cause of action is still recognized, we must consider ordinary principles of contract.

{¶ 16} "'Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.'" *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976). Additionally, "[i]n order to form any contract, there must be a meeting of the minds of the parties regarding the contract's essential terms, and those terms must be reasonably certain and clear." *Bank of New York Mellon v. Rhiel*, 155 Ohio St.3d 558, 2018-Ohio-5087, 122 N.E.3d 1219, ¶ 19, citing *Kostelnik* at ¶ 16-17.

{¶ 17} Tecco argues that he "sufficiently established a 'meeting of the minds' regarding his agreement with Bennett," and he points to the same evidence he presented in opposing the motion for summary judgment. In support of his claim that a meeting of the minds occurred, Tecco refers to a vague reference in an email

from Bennett about getting "200k a piece a year" in regard to the profitability of a new contract, Bennett's silence to an email communication from Tecco regarding the need to "set up this partnership properly" and the need to "get an attorney," Bennett's cursory reference to Tecco as a "partner" in some communications, and Tecco's payment of a short-term loan for which a capital account was created. None of this evidence demonstrates a meeting of the minds occurred regarding the essential terms of an executory agreement to form a partnership. As was the case in *Tritsch*, "[t]he record here is so meagre as to make it very difficult for the courts to determine exactly what the agreement was, if there was a meeting of the minds at all." *Id.* at 19.

{¶ 18} The record shows no agreement upon ownership interest was reached, no capital investment was made other than the acknowledged short-term loan, and other terms were never finalized. Tecco anticipated "we would work that out" at another point in time. However, "[a] purported agreement cannot be enforced in the absence of a demonstration of a meeting of the minds." *Bayer v. Nachtrab*, 6th Dist. Lucas No. L-13-1209, 2014-Ohio-5586, ¶ 29, citing *Kostelnik* at ¶ 16. At best, Tecco had a belief or assumption of a contemplated agreement to form a partnership that was not agreed upon by Bennett. *See Zelina v. Hillyer*, 165 Ohio App.3d 255, 2005-Ohio-5803, 846 N.E.2d 68, ¶ 17-18 (9th Dist.) (finding no meeting of the minds to have a partnership was reached where the plaintiff "figured everything would be 50/50").

{¶ 19} Insofar as Bennett may have referred to Tecco as a "partner," "[m]ere words describing the relationship, however, do not establish the existence of a partnership; the Court must look to Defendants' behavior to make that determination." *Thermodyn Corp. v. 3M Co.*, 593 F.Supp.2d 972, 982 (N.D.Ohio 2008). In Bennett's view, Tecco was "an employee. That is the way it has been since I incorporated in October 2017." Bennett also denounced Tecco's asserted belief of being a partner. Consistent with Bennett's view, the hallmarks of a partnership were absent. As was the case in *Thermodyn*, Tecco has "failed to put forth evidence establishing that there was a meeting of the minds between [the parties] to form a partnership." *Id.* at 982.

{¶ 20} Upon our review, we are unable to find that the evidence upon which Tecco relies creates a genuine issue of material fact. It is apparent from the record that the essential terms of any contemplated executory agreement to form a partnership were not reasonably certain and clear. Accordingly, we conclude no genuine issue of material fact remains to be litigated; appellees are entitled to judgment as a matter of law on Tecco's claim for breach of contract and/or breach of an oral executory contract to form a partnership; and viewing the evidence in the light most favorable to Tecco, reasonable minds can reach a conclusion only in favor of appellees on that claim. Tecco's sole assignment of error is overruled.

{¶ 21} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

SEAN C. GALLAGHER, ADMINISTRATIVE JUDGE

EMANUELLA D. GROVES, J., and
MARY J. BOYLE, J., CONCUR