[Cite as *Promotional Advertising, Inc. v. CS Creative Promotions, L.L.C.*, 2025-Ohio-2022.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  | | |
|---|---|---|
| | : | JUDGES: |
| PROMOTIONAL ADVERTISING, INC., ET AL. | : | Hon. Andrew J. King, P.J. |
| | : | Hon. Kevin W. Popham, J. |
| | : | Hon. David M. Gormley, J. |
| Plaintiffs-Appellees | : | |
| | : | |
| -vs- | : | Case No. 2024CA00107 |
| | : | |
| CS CREATIVE PROMOTIONS, LLC, ET AL. | : | |
| | : | OPINION |
| Defendants-Appellants | | |

CHARACTER OF PROCEEDING:  Appeal from the Stark County Court of
Common Pleas, Case No. 2022 CV 01341

JUDGMENT:  Affirmed

DATE OF JUDGMENT ENTRY:  June 5, 2025

APPEARANCES:

For Plaintiffs-Appellees

ANDREW R. BURTON
Schulman, Roth & Associates
213 Market Avenue N., Suite 300
Canton, OH 44702

For Defendants-Appellants

ANDREW YARGER
Dinn, Hochman & Potter, LLC
6105 Parkland Boulevard, Ste. 100
Cleveland, OH 44124

*Popham, J.,*

{¶1} Appellants Craig Sherman ("Sherman") and CS Creative Promotions, LLC ("CS") appeal the July 10, 2024, judgment entry of the Stark County Court of Common Pleas. Appellees are Scott Cooper ("Cooper") and Promotional Advertising, Inc. ("Promotional"). The trial court granted appellees' summary-judgment motion and appellants' motion for partial summary judgment, finding, *inter alia,* that a partnership did not exist between appellants and appellees. For the reasons set forth below, we affirm.

*Facts & Procedural History*

{¶2} Cooper started Promotional, a marketing company, in 1999. Promotional sells two products: party cruises and paintball tickets. The paintball tickets are sold under the name "Paintball USA," and cover admission and equipment at various participating paintball facilities. Promotional uses multiple sales representatives to market and sell the paintball tickets. These sales representatives are all paid using the same commission method, which is 50 percent of their individuals sales, after expenses and fees are paid or reimbursed. Promotional's sales representatives are independent contractors and each receives an IRS Form 1099-MISC from Promotional each year.

{¶3} Sherman began working with Promotional in 2013, after being recruited by a Promotional sales representative named Rhonda. Rhonda told Sherman how the commission was paid by Promotional. At his deposition, Sherman stated he was hired by Promotional under an "independent contractor model," and got paid commission of 50 percent of anything he sold, after expenses and fees were paid or reimbursed. Sherman confirmed at his deposition this is the same model Promotional utilizes to pay other sales representatives, who Sherman agreed are independent contractors. In 2014, Cooper

asked Sherman to sign an "Independent Contractor Agreement," but Sherman refused to sign it. When Sherman first joined Promotional, each sales representative was assigned a certain location such as a festival or college where they would rent a booth to sell paper tickets. At that time, Sherman sold paintball tickets in-person in Illinois. In 2014, Rhonda left Promotional and Sherman moved to Arizona. Sherman attempted to sell the paintball tickets in-person at several venues in Arizona, but he felt in-person sales were not a worthwhile venture in that territory.

{¶4} Sometime in 2015, Sherman suggested to Cooper that he start selling the paintball tickets online through platforms such as Groupon and LivingSocial. The tickets were the same paper tickets as were sold in person, but the customers would purchase them through the online platforms and receive them in the mail. Sherman testified at his deposition that he and Cooper had an agreement that the online sales of paintball tickets would be a separate venture, and that Sherman/CS and Cooper/Promotional would be partners in this partnership called "Paintball USA."

{¶5} In 2016, Promotional was reincorporated and registered as a corporation in Ohio. In April of 2015, Cooper applied for a trademark of "Paintball USA" with the U.S. Patent & Trademark Office. The Patent & Trademark Office granted the application and registered the trademark "Paintball USA" to Cooper on January 5, 2016. On the registration form issued, it states the trademark "Paintball USA" was "first used" in 1999.

{¶6} Sherman testified at his deposition that he negotiated with Groupon, mailed out tickets, and responded to customer inquiries. Sherman signed the Groupon Merchant Agreement. However, he listed his title as "Marketing Director" of Promotional. The merchant listed on the Groupon Merchant Agreement is "Promotional Advertising."

Sherman provided further deposition testimony that this was done because Paintball USA did not have a checking account. Similarly, the LivingSocial Merchant Agreement lists Promotional as the merchant, and is signed by Sherman as "Marketing Director for Promotional Advertising." This agreement lists Paintball USA as a D/B/A of Promotional.

{¶7} Paintball USA did not have a checking account. Sherman testified at his deposition, "all the revenues from Paintball USA were deposited into Promotional's bank account so all checks were remitted to Promotional." Twice a month, Sherman would send Cooper a "settlement agreement" email, telling Cooper how many tickets Sherman sold, detailing the expenses, and informing Cooper what Sherman's "cut" was. Sherman then paid himself out of Promotional's bank account, using a blank check Cooper had pre-signed and mailed to Sherman. Sherman received 50 percent of the revenue he generated after expenses were paid or reimbursed, with the remainder going to Promotional. In 2018 and 2019, designated as the "Payer," Promotional issued IRS 1099-MISC forms to CS and Sherman. In 2020, 2021, and 2022, Promotional, as "Payer," issued 1099-NEC (non-employee compensation) forms to CS and Sherman.

{¶8} There was no written partnership agreement between appellants and appellees. Sherman did not file paperwork with any secretary of state to memorialize the alleged partnership agreement. Sherman testified at his deposition that this was a "handshake agreement." Sherman further testified that he did not make any capital contributions (defined as any payment on behalf of the partnership that was not reimbursed) to the alleged partnership. Sherman further testified at his deposition that he believed a partnership was created because Cooper regularly referred to Sherman as his "partner" in calls, texts, and emails.

{¶9} In 2022, a sales manager at Groupon became dissatisfied working with Sherman and contacted Cooper about the issues. Cooper contacted Sherman and suggested he (Cooper) become the contact person for Groupon, with Sherman still mailing the tickets and responding to customer inquiries. Sherman did not like Cooper's suggestion, and felt Cooper was not appropriately defending him from what he perceived as Groupon's unfair personal attacks. After Cooper hung up the phone on Sherman, Sherman sent Cooper a series of texts, stating he intended to hire an attorney, file a defamation claim, and negotiate a separate deal with Groupon.

{¶10} One day after Sherman sent email and voice messages telling Cooper he resigned, Sherman went to work for Paintball Promos, a competitor of appellees who sells paintball tickets. The job is commission-based, with Sherman receiving 50 percent of the profits of his individual sales, minus expenses.

{¶11} Promotional filed its first amended complaint on November 21, 2022, and sought the following relief: Count 1 – a declaration that neither CS nor Sherman has an interest in Promotional; Count 2 – a declaration that Promotional did not form a partnership with either CS or Sherman; and Count 3 – a finding that Sherman breached his fiduciary duty (pled in the alternative to Counts 1 and 2).

{¶12} Appellants filed a motion to dismiss, arguing the trial court did not have personal jurisdiction over either CS or Sherman because they do not transact business in Ohio, are located in Arizona, and their business is conducted online through Groupon. Promotional filed a response in opposition to the motion.

{¶13} On March 14, 2023, the trial court issued a judgment entry denying appellants' motion to dismiss. The trial court found Promotional alleged sufficient facts,

when taken as true, to meet its burden under Civil Rule 12(B)(2) to demonstrate appellants were "transacting business" in Ohio such that Ohio's long-arm statute was satisfied. Further, the trial court found due process was satisfied for two separate reasons. First, the trial court found appellants' course of conduct over a period of several years was sufficient to satisfy due process. The trial court based its determination on the allegations that appellants: marketed and sold paintball tickets in Ohio over a period of years; corresponded with thousands of Ohio residents via phone, mail, and online; received Ohio tax forms; and deposited money into an Ohio bank account from the sale of tickets to Ohio residents.

{¶14} Second, the trial court found due process was satisfied because, in their motion to dismiss, appellants alleged that the parties were partners, and, if true, the trial court acquired jurisdiction pursuant to R.C. 1776.06(A) ("the law of the jurisdiction in which a partnership has its chief executive office governs relations among the partners and between the partners and the partnership"). The trial court concluded appellants purposefully availed themselves of the privilege of acting in Ohio, the complaint arises from their activities in Ohio, their acts in Ohio were substantial enough to make the exercise of personal jurisdiction by the court reasonable, and appellants had minimum contacts with the State of Ohio such that the notions of fair play and substantial justice were not offended.

{¶15} After the trial court denied appellants' motion to dismiss, appellants filed an answer to the complaint, counterclaim against Promotional, and third-party complaint against Cooper. Promotional was the sole plaintiff initially. Appellants alleged in their counterclaims and third-party claims that Cooper and Sherman agreed to a 50/50

partnership called "Paintball USA."  Appellants asserted the following causes of action against appellees: (1) breach of contract for appellees' refusal to recognize the partnership agreement and failure to pay appellants 50 percent of the profits pursuant to the partnership agreement; (2) declaratory judgment to declare appellants have a 50 percent ownership interest in the Paintball USA partnership; (3) quantum meruit for the failure of appellees to pay the reasonable value of services appellants rendered; (4) unjust enrichment due to appellees retaining a benefit provided by appellants without compensation; (5) interference with a business relationship because appellees intentionally interfered with appellants' business relationship with Groupon; (6) promissory estoppel based on appellees' alleged promises of compensating appellants as 50 percent partners in Paintball USA; (7) breach of fiduciary duty arising from appellants' status as partners in Paintball USA; (8) conversion; (9) piercing the corporate veil; and (10) accounting.

{¶16}  On May 17, 2024, appellees filed a motion for summary judgment, attaching numerous exhibits, affidavits, and the depositions of both Sherman and Cooper.  Also on May 17, 2024, appellants filed a motion for partial summary judgment on appellees' breach-of-fiduciary-duty claim.  The parties filed responses and replies.

{¶17}  On July 10, 2024, the trial court issued a judgment entry granting appellees' motion for summary judgment and granting appellants' motion for partial summary judgment. The trial court analyzed the totality of the attendant facts and circumstances and found there was no implied partnership between appellants and appellees called Paintball USA.  The trial court utilized the following facts and circumstances to support its determination: there was no evidence demonstrating the parties manifested an intent to

form a business when Sherman expanded Promotional's business into online sales; Sherman considered himself to be an independent contractor immediately before beginning online sales; there was no evidence Sherman or Cooper took any steps to formalize the existence of a relationship that was separate and apart from their previous relationship; any sharing of profits was not prima facie evidence of the existence of a partnership because the payment of a share of the profits to Sherman was for services as an independent contractor; appellants both received 1099-MISC forms from Promotional for years; Paintball USA did not file any tax documents; there was no evidence any liability or losses were to be shared between Sherman and Cooper; Sherman obtained Cooper's permission before launching online sales; the contracts and merchant agreements were solely in Promotional's name; and the partnership property was purchased by Promotional with no indication it was purchased as partnership property.

{¶18} As a result of granting appellees' motion for summary judgment, the trial court declared the following: (1) the operation known as Paintball USA was a tradename (D/B/A) of Promotional, and was not a partnership; (2) appellants did not enter into an express, oral, or implied partnership with Promotional known as Paintball USA; and (3) appellants did not obtain any ownership interest in Promotional. The court also granted summary judgment to appellees on appellants' breach of contract, promissory estoppel, conversion, and breach-of-fiduciary-duty claims, since these claims were premised on the existence of an implied partnership. Further, since appellees' third claim for breach-of-fiduciary-duty was pled in the alternative to the declaratory judgment claims, the trial court granted appellants' motion for summary judgment on that claim.

{¶19} The trial court then addressed the balance of appellants' claims. The court granted appellees' motion for summary judgment on appellants' unjust enrichment and quantum meruit claims, finding that equity and justice did not command the return of a benefit conferred. Additionally, the court granted appellees' summary judgment motion on appellants' tortious interference claim because a party (Promotional) cannot interfere with its own contract. Finally, the trial court granted summary judgment to appellees on appellants' claims to pierce the corporate veil and for accounting, finding these are not independent causes of action, and, absent the viability of the remainder of appellants' claims, these claims could not be maintained.

{¶20} Appellants appeal the July 10, 2024, judgment entry of the Stark County Court of Common Pleas and assign the following as error:

{¶21} "I. THE TRIAL COURT ERRED WHEN IT CITED AN EXPERT OPINION FROM ANOTHER CASE THAT WAS EXCLUDED FROM TRIAL BECAUSE IT WAS NOT RELIABLE IN ORDER TO HOLD THAT AN IRS MISC FORM PREVENTS DEFENDANTS FROM BEING PARTNERS."

{¶22} "II. THE TRIAL COURT ERRED BY RULING THAT IT HAD JURISDICTION OVER DEFENDANTS BECAUSE THEY ENTERED INTO A PARTNERSHIP WITH PLAINTIFF, AN OHIO ENTITY, THEN SUBSEQUENTLY RULING THAT DEFENDANTS DID NOT ENTER INTO A PARTERSHIP WITH PLAINTIFF."

{¶23} "III. THE TRIAL COURT ERRED BY FAILING TO PROPERLY APPLY THE SUMMARY JUDGMENT STANDARD WHEN IT CONSTRUED TEXT MESSAGES IN FAVOR OF THE MOVING PARTY AND AGAINST THE NONMOVING PARTY TO FIND THERE WAS NO PARTNERSHIP."

**{¶24}** "IV. THE TRIAL COURT ERRED BY IGNORING EVIDENCE IN THE RECORD OF LOSSES INCURRED BY DEFENDANTS, HOLDING THAT DEFENDANTS DID NOT SHARE IN THE LOSSES OF THE PARTNERSHIP AND CONCLUDING THAT PROFIT SHARING BY THE PARTIES WAS THEREFORE INVALID."

**{¶25}** "V. THE TRIAL COURT ERRED BY IGNORING EVIDENCE IN THE RECORD THAT DEFENDANTS CONTROLLED PARTNERSHIP PROPERTY INCLUDING ERRONEOUSLY STATING THAT THE PARTNERSHIP SOLD E-TICKETS INSTEAD OF PAPER TICKETS."

**{¶26}** "VI. THE TRIAL COURT ERRED BY ADOPTING FACTS THAT ARE NOT SUPPORTED BY THE RECORD INCLUDING THAT THE PARTIES SPLIT PROFITS PRIOR TO THE FORMATION OF THE PARTNERSHIP."

**{¶27}** "VII. THE TRIAL COURT ERRED BY FINDING THAT DEFENDANTS ENGAGED IN MISCONDUCT WHEN THEY FULFILLED THEIR OBLIGATION TO MITIGATE DAMAGES BY SEEKING ALTERNATIVE EMPLOYMENT WITH A COMPETING COMPANY AFTER THIS DISPUTE AROSE."

**{¶28}** "VIII. THE TRIAL COURT ERRED BY ACCEPTING PLAINTIFF'S ALLEGATION THAT DEFENDANTS BELIEVED THEMSELVES TO BE PARTNERS IN THE CORPORATION PROMOTIONAL ADVERTISING, INC., INSTEAD OF PARTNERS WITH PROMOTIONAL ADVERTISING, INC., IN THE PAINTBALL USA PARTNERSHIP."

II.

**{¶29}** For ease of discussion, we will begin by addressing appellants' second assignment of error. In their second assignment of error, appellants contend the trial court committed error by ruling it had personal jurisdiction over appellants.

**{¶30}** In this case, the trial court denied appellants' motion to dismiss for lack of personal jurisdiction pursuant to Civil Rule 12(B)(2). "Personal jurisdiction is a question of law that appellate courts review de novo." *Kauffman Racing Equip., L.L.C. v. Roberts*, 2010-Ohio-2551, ¶ 27. A plaintiff "need only establish a prima facie showing of personal jurisdiction, which requires sufficient evidence to allow reasonable minds to conclude the trial court has personal jurisdiction." *Ricker v. Mercedes-Benz of Georgetown*, 2022-Ohio-1860, ¶ 12 (10th Dist.). In making this determination, courts "must view the allegations in the pleadings and the evidence in the light most favorable to the plaintiff and make all reasonable inferences in the plaintiff's favor." *Id.* A plaintiff must only make a prima facie showing of jurisdiction to withstand a motion to dismiss. *Clow Water Systems Co. v. Guiliani Assoc., Inc.*, 1999 WL 668559 (5th Dist.).

**{¶31}** An Ohio trial court has personal jurisdiction over a nonresident defendant when (1) the long-arm statute (R.C. 2307.382) and the Rules of Civil Procedure (Civil Rule 4.3) confer jurisdiction and (2) the exercise of jurisdiction comports with due process under the Fourteenth Amendment to the United States Constitution. *LG Chem., Ltd. v. Goulding*, 2022-Ohio-2065.

**{¶32}** R.C. 2307.382 and Civil Rule 4.3 authorize a court to exercise jurisdiction over a nonresident defendant and provide for service of process to effectuate that jurisdiction when a cause of action arises from the nonresident "transacting any business in this state." The statute and rule are broadly worded and "transact" means "to prosecute negotiations; to carry on business; to have dealings." *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 75 (1990).

**{¶33}** Viewing the evidence available to the trial court at the time it ruled on the motion to dismiss in a light most favorable to appellees and resolving all competing inferences in appellees' favor, we find R.C. 2307.382 and Rule 4.3 confer jurisdiction. Appellants sold paintball tickets to thousands of Ohio residents on a continual basis, solicited business in Ohio, marketed in Ohio, had daily contact with an Ohio corporation, and deposited money into an Ohio bank account.

**{¶34}** For a court's exercise of jurisdiction to comport with due process, the defendant must have "minimum contacts" with the forum state such that "the maintenance of the suit" is reasonable and "does not offend traditional notions of fair play and substantial justice." *Internatl. Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, et al.*, 326 U.S. 310, 316 (1945). Specific jurisdiction exists such that a forum state's exercise of personal jurisdiction over a defendant comports with due process when (1) a defendant purposefully avails itself of the privilege of acting in the forum state or causing a consequence in the forum state, (2) the cause of action arises from the defendant's activities there, and (3) the act or consequence caused by the defendant has a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable. *Kauffman Racing*, 2010-Ohio-2551. So long as a commercial actor's efforts are "purposefully directed" towards the residents of another state, courts have "consistently rejected [the] notion that [the] absence of physical contacts can defeat personal jurisdiction there." *Ricker* at ¶ 22.

**{¶35}** Appellants assert the trial court determined they had minimum contacts with Ohio because they formed a partnership with Promotional and that "the trial court's subsequent summary judgment ruling that no partnership was formed removes the

minimum contacts necessary for jurisdiction, and without jurisdiction, the trial court's summary judgment decision is void ab initio."

{¶36} We find appellants' argument to be unpersuasive. The trial court determined procedural due process was met for two separate reasons, one being the allegation of a partnership, and the other being appellants' course of conduct over a period of years (selling paintball tickets to thousands of Ohio residents, marketing paintball tickets to Ohio residents, corresponding with Ohio residents via phone, mail, and online, being paid by an Ohio bank account, daily contact with an Ohio corporation). These allegations of continuous contact with Ohio are sufficient to meet the procedural due process portion of the personal jurisdiction analysis without any referral to the partnership status of the parties.

{¶37} Unlike the cases cited by appellants in which courts found no personal jurisdiction existed when a nonresident completed only a single consumer transaction or when a nonresident seller played only a passive role in sales in the state, this was not a single consumer transaction and appellants played more than a passive role in sales in the state. Appellants actively sought to sell goods (tickets) in Ohio on a continual basis, deliberately reached out beyond Arizona to market in Ohio, and had continuing contact with an Ohio corporation (Promotional). *Wilkerson Shoe Co. v. Natl. Super Markets, Inc.*, 1994 WL 386097 (10th Dist.) (sufficient minimum contacts when there were negotiations between parties including phone calls, letters, fax); *LG Chem., Ltd. v. Goulding*, 2022-Ohio-2065 (personal jurisdiction not lacking when company marketed batteries in Ohio and customer purchased these batteries); *Clow Water Systems Co. v. Guiliani Assoc.,*

*Inc.*, 1999 WL 668559 (5th Dist.) (even though didn't maintain physical presence in Ohio, still personal jurisdiction when goods shipped from Ohio).

{¶38} Further, appellants contend that since the trial court ultimately determined there was no partnership between CS and Promotional, this determination invalidates the personal jurisdiction previously held by the trial court. Appellants argue that since the lack of personal jurisdiction renders a judgment void, when the trial court found no partnership, it essentially "voided" its own personal jurisdiction and "voided" its own judgment entry. Appellants contend the only way the trial court could have maintained jurisdiction over them was to rule in their favor on the summary judgment motion.

{¶39} There is no support for appellants' "conditional jurisdiction" argument in the law. Once jurisdiction attaches to the person and the subject matter of litigation, subsequent events will not operate to oust jurisdiction. *State, ex rel. Pizza v. Raymond*, 62 Ohio St.3d 382 (1992); *Bayview Loan Serv., L.L.C. v. Likely*, 2017-Ohio-7693 (9th Dist.), *Paulus v. Beck Energy Corp.*, 2017-Ohio-5716 (7th Dist.), *Weinberger v. Weinberger*, 43 Ohio App.2d 129 (9th Dist. 1974). A trial court's jurisdiction continues until the entry of a final judgment on the merits. *Id.* Appellants are attempting to use subsequent events or a subsequent ruling to oust jurisdiction, which is not permissible. "Jurisdictional facts must be judged as of the time the complaint is filed, subsequent events cannot serve to deprive the court of jurisdiction once it has attached." *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250 (5th Cir. 1998). Invoking the jurisdiction of the court "depends on the state of things at the time of the action brought." *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 2012-Ohio-5017 at ¶ 25. We find the trial court did not commit error in finding it had personal jurisdiction over appellants, and the

ruling on the summary judgment motion cannot serve to deprive the trial court of personal jurisdiction once it has attached. Appellants' second assignment of error is overruled.

{¶40} In the remaining assignments of error, the trial court decided the issues pursuant to summary judgment motions.

*Summary Judgment Standard*

{¶41} Civil Rule 56 states, in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

{¶42} A trial court should not enter summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed

facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427 (1981). A court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning-Ferris Inds. Of Ohio, Inc.*, 15 Ohio St.3d 321 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301 (6th Dist. 1999).

{¶43} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35 (1987). This means we review the matter de novo. *Doe v. Shaffer*, 2000-Ohio-186.

I.

{¶44} In their first assignment of error, appellants argue the trial court committed error when it cited an expert opinion from another case to hold that an IRS Form 1099-MISC disproved a partnership.

{¶45} We disagree with appellants' characterization of the trial court's decision. The trial court did not hold that an IRS Form 1099-MISC alone "disproved a partnership." Rather, the trial court found the issuance of 1099-MISC forms to both Sherman and CS by Promotional for a number of years was one of the factors to consider when determining whether the totality of attendant facts and circumstances demonstrates the existence of an implied partnership between CS and Promotional.

{¶46} As noted, this Court reviews the trial court's determination on a summary judgment motion de novo. We need not find every citation listed by the trial court persuasive to affirm the trial court's decision. The trial court found the presence of 1099-MISC or 1099-NEC forms, along with the lack of a Form 1065 or Schedule K-1, to be

relevant in a totality of the circumstances analysis when determining whether an implied partnership is created. The trial court's finding is in accordance with this Court's previous holding in which we found that whether any profits an alleged partner received were reported as K-1 partnership income on a Form 1065 or as miscellaneous income on a Form 1099 was a consideration in determining, on a motion for summary judgment, whether the totality of the circumstances demonstrated an implied partnership. *Westbrook v. Swiatek*, 2011-Ohio-781, ¶ 58 (5th Dist.) (finding relevant to a determination as to whether there was a genuine issue of material fact as to the formation of an implied partnership that "any profits received were not reported as either K-1 partnership income, but as capital gains or MISC Form 1099 income"); *see also In re Estate of Ivanchak*, 2006-Ohio-5175 (11th Dist.) (factor a court may consider as to whether there is a partnership is whether a partnership tax return, Form 1065, was filed); *Northeast Ohio College of Massotherapy v. Burek*, 2001-Ohio-3293 (7th Dist.) (use of Form 1099 typically suggests the parties were in an independent contractor relationship); *Thermodyn Corp. v. 3M Co.*, 593 F.Supp.2d 972 (N.D. Ohio 2008) (objective indicators as to whether a partnership is created includes the nature of tax returns filed); *Berger v. Dare*, 99 Ohio App.3d 103 (12th Dist. 1994) (fact that no partnership tax return was ever filed was a consideration in determining whether a partnership was formed). Further, Sherman himself considered the issuance of the Form 1099-MISC and Form 1099-NEC relevant because he testified at his deposition that, "we can resort back to the fact that [Cooper] did send me 1099's and at least we could consider an independent contractor relationship if he's refusing to accept our partnership."

**{¶47}** We find the trial court did not commit error in considering the nature of the tax returns filed or not filed in determining whether the totality of the attendant facts and circumstances demonstrates the existence of an implied partnership. Appellants' first assignment of error is overruled.

## III., IV., V.

**{¶48}** In appellants' third, fourth, and fifth assignments of error, appellants contend the trial court committed error when it determined no partnership existed between CS and Promotional called Paintball USA.

**{¶49}** R.C. 1776.01(M) defines a partnership as "an association of two or more persons to carry on as co-owners a business for-profit formed under section 1776.22 of the Revised Code, a predecessor law, or a comparable law of another jurisdiction." A partnership exists where there is: (1) an express or implied partnership contract between the parties; (2) the sharing of profits and losses; (3) mutuality of agency; (4) mutuality of control; and (5) co-ownership of the business and of the property used for partnership purposes or acquired with partnership funds. *Westbrook v. Swiatek*, 2011-Ohio-781 (5th Dist.). In the absence of a written partnership agreement, an implied partnership can be found from the totality of the attendant facts and circumstances. *Id.* "Since every business relationship is unique, no single fact or circumstance can operate as a conclusive test for the existence of a partnership." *In re Estate of Ivanchak*, 2006-Ohio-5175, ¶ 21 (11th Dist.). However, objective indicators of an implied partnership agreement may include the existence of a written or oral partnership agreement, joint ownership and control of property, the ability of members to bind the business entity, and the nature of the tax

returns filed by the business entity. *Thermodyn Corp. v. 3M Co.*, 593 F.Supp.2d 972 (N.D. Ohio 2008).

{¶50} In analyzing the attendant facts and totality of the circumstances in this case, we find there are no genuine issues of material fact that would demonstrate the existence of a partnership between the parties called Paintball USA. There is no written partnership agreement, and neither party filed paperwork with any state secretary of state. Sherman made no monetary capital contributions to the alleged partnership. There were no bank accounts in Paintball USA's name, and Sherman was not an authorized signer on any of Promotional's accounts, including the checking account utilized to deposit the Groupon-related funds. There was no property in the alleged partnership's name.

{¶51} Sherman had no authority to bind Paintball USA, as evidenced by the fact that all of the Groupon and LivingSocial agreements and/or amendments were executed in Promotional's name, not in the name of Paintball USA. Sherman signed these agreements as the "Marketing Director" of Promotional, not as someone working for Paintball USA or as someone who had the ability to bind Paintball USA. Sherman did not file either a Form 1065 (U.S. Return of Partnership Income) or a Schedule K-1 (Partner's Share of Current Year Income, Deductions, Credits, and other Items) for either himself or Paintball USA, and did not obtain a tax identification number for Paintball USA. For the years 2018-2022, Promotional issued both Sherman and CS either a Form 1099-MISC or a Form 1099-NEC, evincing either miscellaneous or nonemployee compensation to appellants. The trial court did not commit error in finding no implied partnership exists. *Berger*, 99 Ohio App.3d at 108-09 (12th Dist. 1994) (no implied partnership when no written agreement, no partnership tax return, no losses shared); *Ivanchak*, 2006-Ohio-

5175 (11th Dist.) (no partnership because no written agreement, no bank account, no partnership tax returns); *Westbrook v. Swiatek*, 2011-Ohio-781 (5th Dist.) (no partnership when no written partnership document, no authority to bind, did not pay taxes as partnership).

{¶52} Appellants contend the trial court improperly failed to recognize that appellants shared in the losses of the alleged Paintball USA partnership and failed to accord the profit-sharing situation by the parties its proper presumption. The case cited by appellants in support of their assertion that sharing of profits is prima facie evidence of the existence of a partnership, *Olander & Brophy v. Northeastern Pools*, 1991 WL 6268 (5th Dist.), is a case that cites the language contained in R.C. 1775.05 and R.C. 1775.06 for its holding ("the receipt by a person of a share of the profits of a business is prima-facie evidence that he is a partner in the business . . . "). However, Revised Code Chapter 1775 was repealed effective January 1, 2010, and replaced by the Ohio Uniform Partnership Act contained in R.C. Chapter 1776. R.C. 1776.22(C)(3) now provides, "a person who receives a share of the profits of a business is presumed to be a partner in the business, unless the profits were received in payment for any of the following . . . (b) [s]ervices as an independent contractor or wages or other compensation to an employee . . .".

{¶53} It is clear R.C. 1776.22(C)(3)(b) is applicable in this case. Sherman calculated his commission in the same manner as any sales representative working for Promotional. He admitted he was hired under an "independent contractor" model and the only thing that changed from when Sherman was hired to when he claims the partnership was established was the manner in which Sherman sold the paintball tickets. His pay structure remained the same before and after he moved from in-person sales to online

(Groupon) sales. There is no indication that Paintball USA ever had any losses because any of the normal business expenses were all paid by Promotional. Sherman stated he was reimbursed by Promotional for any business expense he personally incurred, and did not provide any monetary capital contribution to the alleged partnership. Similarly, there is no evidence Paintball USA realized any profits, because Groupon paid Promotional, not Paintball USA, and deposited the funds into Promotional's bank account. It was from Promotional's account that Sherman received his commission checks, not from Paintball USA. The revenue from Groupon sales was deposited directly into Promotional's account, which Sherman had no access to. Sherman was required to submit a "settlement" email to Cooper every two weeks detailing his expenses and his commission from the tickets he sold on Groupon. Appellants contend that Cooper's request of Sherman to help finance a $25,000 landing page requested by Groupon is evidence that Sherman incurred loss on behalf of Paintball USA. However, Sherman specifically testified in his deposition that he only received quotes for this landing page, and never actually paid $25,000 for the landing page because Cooper ultimately did not agree to it.

{¶54} Appellants also contend the text messages or emails Sherman sent calling himself an independent contractor were improperly utilized by the trial court in support of its finding of a lack of implied partnership. In a text message dated June 13, 2022, Sherman texted Cooper, "I lined up all those [paintball] parks as an independent contractor." In an email to Groupon's attorney in June of 2022, Sherman stated, "I have resigned from Paintball USA. But understand, while Scott owns the name Paintball USA and Promotional Advertising, I own my LLC, which is considered an independent contractor, working on behalf of Paintball USA." In an email dated February of 2016,

Sherman stated he served as the marketing manager and sales manager, "for Promotional Advertising which owns the Paintball USA ticket name." Appellants assert Sherman explained in his deposition why he used the phrase "independent contractor" multiple times, and the trial court failed to construe these explanations in his favor when granting the summary judgment.

{¶55} However, in his deposition, Sherman confirmed that he did utilize the phrase "independent contractor" multiple times. His explanations as to why he utilized the phrase (he did not want to get into a five-year legal dispute over whether he was a partner, Cooper would not communicate with him if he called himself a partner, a third-party such as Groupon would understand the phrase independent contractor rather than the term partner) do not change the fact that he utilized the phrase "independent contractor" multiple times after he gained extensive knowledge of what it meant to be an independent contractor while researching the phrase during his employment at the Chicago Sun Times. Sherman testified that since Cooper "was obviously not going to communicate with me as a partner, then we can resort back to the fact that he did send me 1099's and at least we could consider an independent contractor relationship if he's refusing to accept our partnership." Similarly, at his deposition when asked about the email to Groupon's attorney, Sherman stated it was "more convenient" to utilize the phrase "independent contractor" because a third-party would be more familiar with the phrase. Thus, instead of "get[ting] into a five-year legal dispute over whether I was a partner, I said, okay, consider me an independent contractor." Accordingly, the evidence in the record supports a determination that Sherman called himself an "independent contractor" multiple times,

and the trial court did not improperly construe the text messages or emails against appellants. Rather, the trial court considered it as one factor in its analysis.

{¶56} Finally, appellants argue the trial court committed error by ignoring evidence in the record that appellants controlled partnership property, including erroneously stating the partnership sold e-tickets instead of paper tickets.

{¶57} Appellants' argument is that they controlled partnership property in the form of paper paintball tickets and the merchant services portal. However, none of this property is held in the alleged partnership's name. The merchant agreements specifically listed the merchant as Promotional. Thus, Promotional had control over the merchant portal and items associated with Groupon because there is no indication in the instrument that Sherman was signing in his capacity as a partner or that a partnership even existed. R.C. 1776.23(E). Similarly, the physical tickets were the same tickets Sherman sold when he classified himself as an independent contractor for Promotional. Nothing about the tickets changed, other than the fact that Sherman mailed them to the customers provided by Groupon rather than handing them to customers at a festival or college fair. There was no indication of Sherman's capacity as partner or the existence of the partnership when the tickets were acquired, because they were the same physical tickets as were utilized for in-person sales. Appellants failed to demonstrate a genuine issue of material fact that they had control over any alleged partnership assets.

{¶58} Appellants also contend there is a genuine issue of material fact as to whether Paintball USA is an implied partnership between appellants and appellees because Cooper would refer to Sherman as his "partner" in phone conversations, e-mails, and text messages. However, it is undisputed that Cooper used the word "partner" to refer

to all of Promotional's sales representatives, and anyone he did business with. This cursory reference to Sherman as a partner in some communications does not create a genuine issue of material fact when analyzing the totality of the circumstances. See *Tecco v. Iconic Labs, LLC*, 2022-Ohio-2041 (8th Dist.).

{¶59} Upon our review of the attendant facts and totality of the circumstances, we find the trial court properly found Paintball USA is not an implied partnership between appellants and appellees, but rather is a D/B/A of Promotional, which is wholly owned by Cooper.

VI.

{¶60} In their sixth assignment of error, appellants contend the trial court adopted facts that are not part of the record in its judgment entry. Specifically, that the trial court "made up" the fact that "Promotional paid [appellants] 50% of all proceeds from sales, exactly in the same manner as had been done for some time before launching online sales."

{¶61} We find no merit to appellants' argument, as the trial court's finding is supported by the evidence in the record, specifically, Sherman's deposition. Sherman testified that when Rhonda first approached him about working and said, "come work for us" she "meant for Promotional Advertising." Further, that he would get paid, "commission of 50 percent of anything I sold minus expenses." Sherman testified that when he "first went to work for Promotional Advertising," he would "work various venues, high-traffic venues, and would get paid commission of 50% of anything sold minus after expenses." When asked whether other sales representatives who were paid as independent

contractors were paid by getting 50 percent of whatever they sold after expenses, Sherman responded, "yeah, absolutely."

**{¶62}** While Sherman claims he had "no relationship" with Cooper when he moved to Arizona, he certainly had a relationship with Promotional at that time, as Promotional was the one paying him. This is exactly what the trial court found, i.e., that Promotional paid Sherman in the same manner before and after the online sales were launched.

**{¶63}** Appellants' sixth assignment of error is overruled.

VII.

**{¶64}** In their seventh assignment of error, appellants challenge the trial court's granting of summary judgment to appellees on appellants' quantum meruit and unjust enrichment claims.

**{¶65}** The doctrine of unjust enrichment "applies when a benefit is conferred and it would be inequitable to permit the benefitting party to retain the benefit without compensating the conferring party." *Bollman v. Lavery Auto. Sales & Service, LLC*, 2019-Ohio-3879 (5th Dist.). The elements of an unjust enrichment claim are: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant knew of the benefit; and (3) it would be unjust to allow the defendant to retain the benefit without payment to the plaintiff. *Id.*

**{¶66}** A claim for quantum meruit shares the same essential elements as a claim for unjust enrichment, and both doctrines are equitable doctrines; however, the difference between the two doctrines is in the calculation of damages *Id.* The equitable doctrines of unjust enrichment and quantum meruit are generally applied when one party confers some benefit upon another without receiving just compensation for the reasonable value of

services rendered. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51 (1989).

{¶67} While the trial court did consider appellants' formation of a business relationship with a competitor of appellees the day after Sherman's resignation, the move to work for a competitor was not the sole basis for the trial court's determination on the unjust enrichment and quantum meruit claims. Rather, the trial court found that because appellants received 50 percent of all proceeds from sales, they received just compensation for the reasonable value of the services rendered.

{¶68} We reiterate that this Court employs a de novo standard of review on summary judgment, no matter what language the trial court used. Upon our de novo review, we find the third element of unjust enrichment/quantum meruit is not met in this case, as no reasonable factfinder could conclude appellants were not fully compensated for the work they performed. *Bollman*, 2019-Ohio-4701 (5th Dist.).

{¶69} Sherman was compensated like every other sales representative was compensated. He received 50 percent commission from sales, less expenses paid or reimbursed. Sherman described how his online endeavors such as negotiating with Groupon and his daily investment in customer service resulted in increased sales and increased success of the selling of paintball tickets. However, Sherman was compensated for these efforts when he received 50 percent commission from these sales (less expenses), and any additional work he did was reflected in the increased amount he made each month in commission from these sales. Sherman was paid for any benefit he conferred upon appellees, and both Sherman and Cooper equally benefited from increased sales via the Groupon platform. While Sherman had no obligation to answer

calls or negotiate with Groupon, he ultimately benefited himself because, according to his own testimony, his efforts increased sales. Appellees did not retain any benefit conferred by Sherman; rather, Promotional provided Sherman with bi-monthly commission payments from the Groupon sales.

{¶70} We find there is no genuine issue of material fact as to appellants' claims for unjust enrichment and quantum meruit because they were fully compensated for the work performed. Appellants' seventh assignment of error is overruled.

VIII.

{¶71} In appellants' final assignment of error, they contend the trial court committed error by allegedly "accepting [appellees'] allegation that [appellants] believed themselves to be partners in the corporation Promotional Advertising, Inc., instead of partners with Promotional Advertising, Inc., in the Paintball USA partnership."

{¶72} We disagree with appellants, as evidenced by the language utilized by the trial court. The trial court stated in its judgment entry, "[d]efendants' position is that Paintball USA was a new venture, separate from Promotional Advertising, Inc., and Sherman was a partner in this new, online venture," and "[d]efendants seek to carve Paintball USA out into a separate entity." Clearly, the trial court understood appellants' position and did not simply adopt or accept the arguments made by appellees. The trial court went through its analysis and based on this analysis, concluded, "the operation known as Paintball USA was a tradename (D/B/A) of Plaintiff Promotional Advertising, Inc.," and "[d]efendants . . . did not enter into an express, oral, or implied partnership with Plaintiff . . . known as 'Paintball USA.'" Any mention the trial court made of an alleged

claim by appellants in Promotional was to specifically address the declaratory judgment claim made by appellees, not an improper adoption of appellees' arguments.

{¶73} Upon our de novo review, this Court clearly understands appellants are claiming that Sherman/CS and Cooper/Promotional are partners in the alleged partnership called Paintball USA. As detailed above, we find no genuine issue of material fact exists as to whether an implied partnership called Paintball USA was formed between appellees and appellants, and find the operation known as Paintball USA was a tradename (D/B/A) of Promotional, not an implied partnership. Appellants' eighth assignment of error is overruled.

{¶74} Based on the foregoing, appellants' assignments of error are overruled. The July 10, 2024, judgment entry of the Stark County Court of Common Pleas is affirmed.

By Popham, J.,

King, P.J. and

Gormley, J., concur